13486

LEWIS v. SEABOARD AIR LINE RAILWAY CO. *ET AL.*

(166 S. E., 134)

Mr. J. *Waties Waring,* for appellant, City of Charleston,

Messrs. *Buist & Buist,* for appellant, Seaboard Air Line Ry. Co.,

*Messrs. Logan & Grace* and *John I. Cosgrove,* for respondent,

October 6, 1932.

The opinion of the Court was delivered by Mr. Justice Bonham.

This appeal is from a verdict and the judgment entered thereon against both defendants—appellants here—in differing amounts. The circumstances out of which the litigation arose are thus stated in a summary of the pleadings:

Seaboard Air Line Railway Company has tracks which cross Meeting Street, in the City of Charleston, diagonally, at a point between Huger Street on the south and Cedar Street on the north. The ordinance of the City of Charleston imposes upon the railway company the duty of installing and maintaining a light of not less than 600 candle power at the place of crossing, and to maintain a flagman whose duty it is to warn travelers on the street of the approach of trains. At a point over the center of Meeting Street and 71 feet from the crossing is an arc light.

The complaint alleges the corporate capacity of the Seaboard Air Line Railway Company and the corporate municipal capacity of the city council of, Charleston, which facts are admitted by the answers of both defendants. The complaint further alleges that on or about the 22d day of September, 1928, William H. Lewis was in the employ of the

Seaboard Air Line Railway Company as flagman at the point where the tracks of the railway company cross Meeting Street; that at the point of intersection, in the nighttime, the crossing was illuminated by a bright arc light which hung immediately over it, as required by the ordinance of the City of Charleston; that, on the day named by it, September 22, 1928, the arc light at the crossing was not lighted, and had not been lighted for several nights prior thereto, and, as a result of its not being lighted, the place of work of the flagman was rendered unsafe and the roadway of Meeting Street was rendered defective. The defective and unsafe place of work of the flagman was known to the defendants, and was knowingly maintained by them with actual knowledge of the increased hazards of employment of the flagman; that on the 22d day of September, 1928, between the hours of 2 and 3 o'clock a. m., the night being dark, while W. H. Lewis, the flagman, was in the performance of his duties at the crossing, he was suddenly and without any warning run down by an automobile operated negligently and carelessly on Meeting Street, and received injuries from which he died shortly thereafter; that the injuries and death of the said W. H. Lewis were due to and caused by the joint, concurrent negligence, carelessness, recklessness, willfulness, and wantonness of the defendants named above, their agents and servants.

Then follow eight specifications of negligence, all of which center around the failure of the defendants to have lighted the arc lamp at the point of crossing of Meeting Street by the tracks of the Seaboard Air Line Railway Company. The complaint alleges that, as to the defendant the city council of Charleston, W. H. Lewis did not in any way bring about his injury and death by his own negligent act, nor did he negligently contribute thereto; that Mary N. Lewis, plaintiff herein, was duly appointed administratrix of the estate of the said W. H. Lewis and brings this action in that capacity for the benefit of herself, as widow, and

the children of the said W. H. Lewis (naming them). She asks for damages in the sum of $50,000.00.

It may be stated here that during the progress of the trial it developed that the engine and train of cars which W. H. Lewis was about to flag were moving from Savannah, Ga., to Charleston, S. C., in interstate commerce; when this fact came to light, plaintiff was allowed to amend paragraph 8 of her complaint as follows: "That at the time of the said accident and death of the said W. H. Lewis he was employed by the defendant in interstate commerce and that he was a married man and left surviving him his widow, Mary N. Lewis, and two children, Edgar M. Lewis and Ruby W. Lewis, who, by reason of the negligent killing of the said decedent, have suffered great pecuniary loss."

The answer of the railway company sets up, for a first defense, that: It admits the corporate capacity of the defendant road and that it was engaged in interstate commerce in the transportation of passengers and goods for hire; it admits likewise the corporate municipal capacity of the city council of Charleston; it admits that W. H. Lewis was in the employ of the Seaboard Air Line Railway Company as a flagman, and that, while so engaged at what is known as the Meeting Street crossing, he suffered injuries from which he died; it admits that the Seaboard Air Line Railway Company, with the consent of the city council of Charleston, and under its authority and control, had constructed and maintained its main line track across Meeting Street; that the railway company at the point of crossing, pursuant to the ordinance of the City of Charleston, had provided, stationed, and maintained a flagman; it denies the remaining allegation of paragraph 4 of the complaint; it denies the allegations of paragraph 5 of the complaint, except that it admits that on or about the time set out in the fifth paragraph of the complaint the plaintiff's intestate, while engaged in the act of flagging the crossing for the passage of an engine with train attached, operated by said railroad, which engine and train

were engaged at the time in interstate commerce from Savannah, Ga., to Charleston, S. C., was suddenly and without warning run down and killed by an automobile negligently and recklessly operated by unknown parties, other than this defendant, its agents or servants; and this defendant alleges that the injuries so inflicted, and the death of plaintiff's intestate, did not result in whole or in part from the negligence of any of the officers or employees of this defendant, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, boats, wharves, or other equipment. It denies the allegations set out in the sixth paragraph of the complaint (this paragraph alleges that the death of the said W. H. Lewis was due to and caused by the concurrent negligence, carelessness, recklessness, willfulness, and wantonness of the defendants, their agents and servants, in the particulars therein set out). It denies any information sufficient to form a belief as to the allegations of paragraph 7 and of paragraph 8, except, as alleged in said paragraph, it admits on information and belief that W. H. Lewis departed this life on or about September 22, 1928; it denies the allegations set out in paragraph 9 of the complaint, and denies each and every allegation of the complaint not especially admitted, qualified, or explained.

For a second defense, it repeats the allegations of the first defense; it alleges that, at the time of the said accident, the Seaboard Air Line Railway Company was engaged in interstate commerce, and plaintiff's intestate was employed by this defendant, in such commerce, as a flagman at Meeting Street in the City of Charleston; the said intestate at the time of the alleged accident was engaged in his duties as flagman for this defendant, at the said point, and assumed the risk, when so engaged as flagman, of being suddenly and without any warning run down and upon by an automobile negligently and recklessly operated upon Meeting Street, which risk was necessarily incident to the employment of plaintiff's intestate as flagman, as aforesaid, obvious and

known to him; that the injuries and death which plaintiff's intestate suffered as alleged in the amended complaint were caused by an automobile negligently and recklessly driven upon Meeting Street by some person or persons other than this defendant, its agents or servants, and unknown to this defendant. The risk of which said injuries and death resulting therefrom plaintiff's intestate assumed, as aforesaid, and that no violation by this defendant of any statute enacted for the safety of employees contributed to the injury or death of plaintiff's intestate.

· For third defense, it is alleged that the defendant Seaboard Air Line Railway Company was, at the time of the alleged accident, engaged in interstate commerce, and the cause of action against it falls under the provisions of the Act of Congress of the United States governing liability for injuries to employees of railway companies, commonly known as the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59); and the cause of action set out in the amended complaint against its co-defendant, the city council of Charleston, is a wholly different cause of action, and the right of action conferred by the Employers' Liability Act against this defendant, Seaboard Air Line Railway Company, is not conferred by said Act against any other person or corporation; wherefore the Seaboard Air Line Railway Company by way of defense alleges under the facts above stated that (a) there is a misjoinder of causes of action herein; (b) there is a misjoinder of parties defendant, and that the defendant, the city council of Charleston, is not and cannot be held liable to plaintiff under the Employers' Liability Act.

The answer of the city council of Charleston admits the allegations as to the corporate capacity of the defendants and that plaintiff is the duly appointed administratrix of the deceased, W. H. Lewis; it has no knowledge or information sufficient to form a belief as to the allegations of paragraph 3 of the complaint; it admits so much of paragraph 4 as alleges that, at the times stated in the complaint, Seaboard

Air Line Railway Company had, with the consent of the city council of Charleston, constructed and maintained one of its main line tracks across Meeting Street in the City of Charleston; it admits that the said Meeting Street was and is one of the main arteries of vehicular travel north and south into and out of the City of Charleston; that it has no knowledge or information sufficient to form a belief, as to the remaining allegations of paragraph 4 of the complaint; it denies the allegations of the fifth and sixth paragraphs of the amended complaint; has no knowledge sufficient to form a belief as to the allegations of the seventh and eighth paragraphs of the complaint; it denies the allegations of the ninth paragraph of the complaint; and denies all allegations not specifically admitted.

Upon the issues made by the pleadings as thus stated, the case went to trial at the January, 1931, term of the Court of Common Pleas for Charleston County before Judge Mauldin and a jury, and resulted in a verdict for $7,500.00 against the Seaboard Air Line Railway Company and $2,500.00 against the city council of Charleston, for actual damages; there being no verdict for punitive damages. The appeal is from the judgment on the verdict, and from the order refusing new trial and from the rulings of the trial Judge during the course of the trial. At the close of the testimony for plaintiff, each defendant made a motion for nonsuit, which motions were overruled. At the conclusion of the taking of all the testimony, both defendants made motions for directed verdict, which motions were refused. After the verdict was rendered, both defendants made motions for a new trial, which motions were refused.

The exceptions on behalf of both defendants are numerous, there being 24 on behalf of the railway company and 11 on behalf of the city council of Charleston. In our judgment, it is not necessary to consider these exceptions *seriatim*. We think the case is disposed of by the exceptions of both appellants which charge error to the presiding Judge, for that he

did not direct a verdict in favor of both defendants on the ground that there was no evidence of negligence on the part of either of them which was the proximate cause of the injury and death of plaintiff's intestate.

Was the failure to have the lamp at the Meeting Street crossing lighted on the night of this accident the proximate cause of the injuries complained of? It is not sufficient to show negligence. It must be shown that the negligence was the proximate cause of the injury.

Proximate cause is defined "as that which, in a natural and continuing sequence, unbroken by any new cause, produces an event, and without which the event would not have occurred." 50 C. J., 838.

In the case of *Sandel v. State,* 115 S. C., 169, 104 S. E., 567, 569, 13 A. L. R., 1268, Mr. Justice Hydrick, speaking for the Court, said:

"The Court erred in charging: 'No recovery can be had where there was any intervening cause, in the absence of which * * * the patient would not have died.' The request ignored some of the essential elements of an intervening cause which will shield the original wrongdoer from liability. Such an intervening cause must at least be new and independent, not under the control of the original wrongdoer, or one which by the exercise of reasonable foresight and diligence he should have anticipated and guarded against. It must break the continuity of causal connection between the original wrongful act or omission and the injury, so that the former cannot be said to have been the efficient cause of the latter. * * *

"The test, therefore of the sufficiency of intervening causes to defeat recovery is not to be found in the mere fact of their existence or number, but rather in their nature, and the manner in which they affect the continuity of the operation of the primary cause, or the connection between it and the injury. If they so affect it that the injury cannot fairly be said to be the natural and probable consequence of the pri-

mary cause, they become the proximate or efficient, and the primary becomes the remote, cause. The law does not go back of the last efficient cause. *Cannon v. Lockhart Mills,* 101 S. C., 59, 85 S. E., 233; *Carter v. R. R. Co.,* 109 S. C., 119, 95 S. E., 357 [11 A. L. R., 1411]; *Milwaukee Railroad Co. v. Kellogg,* 94 U. S., 469, 24 L. Ed., 256, 22 R. C. L., 132-134."

In the case of *Moseley v. Southern Ry. Co. et al.,* reported in 164 S. C., 193, 162 S. E., 94, 96, Mr. Acting Associate Justice Cosgrove, delivering the opinion of the Court, said:

"Under the fundamental law of negligence, however, in order for plaintiff to recover, the burden was upon her to show not only that defendants were negligent, as alleged in the complaint, but that the negligence relied on was the proximate cause of the death of plaintiff's intestate. In other words, that defendants were guilty of actionable negligence.

"The complaint alleged that on the date therein mentioned, in the nighttime, plaintiff's intestate was walking along the walkway, or roadbed, above described, and, by reason of the negligence above set forth, fell into the cut and met his death.

"The vital inquiry arises: Did Moseley, in the nighttime, walk along this path, trip over the unprotected abutment, and fall to his death below?

"The burden, of course, was upon plaintiff to prove this essential element in her case; for no matter how negligent defendants may have been in the maintenance of the pathway and cut, unless Moseley was shown by the evidence to have *used* the pathway and to have suffered by reason of the negligence proved, plaintiff has not sustained the burden of proof imposed upon her by the law."

"It is well settled that before recovery can be had for negligence it must be shown that the injury was the proximate result of that negligence. If there be an intervening cause, and the prior cause do nothing more than give rise to the circumstances under which the injury occurs, then such prior cause cannot be said to be the proximate cause." *Mar-*

*tin v. So. Ry. Co.,* 77 S. C., 370, 58 S. E., 3, 5, 122 Am. St. Rep., 574.

"Where, in the sequence of events between the original default and the final mischief, an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause. * * * *This is emphatically true when the intervening cause is the act of some person entirely unrelated to the original actor."* (Italics added.) *Cannon v. Lockhart Mills,* 101 S. C., 59, 85 S. E., 233, 234.

"Obviously, the foresight which the law imputes to a *tortfeasor cannot extend to consequences brought about by the intervention of a responsible human being, where the act of the intervener breaks the chain of causation between the original wrong and the injury complained of, and is in itself sufficient to constitute an efficient, responsible cause of the injury."* (Italics added.) *Foster v. City of Union,* 129 S. C., 257, 123 S. E., 839, 843.

In the light of these rulings let us scan the evidence in this case:

The setting is before the Court; the flagman is upon the street with his red lantern to flag the approaching train. It is alleged in the complaint, and conceded, that he was run down and upon by an automobile negligently and recklessly operated by a hit and run driver and received injuries from which he died. It may be conceded here that the overhead light at or near the crossing was not lighted. Was that the proximate cause of the injury and death of the flagman? There is only one eyewitness to the tragedy (he was offered by the plaintiff), W. R. Seabrook, who testified that he was employed at the car barn of the S. C. Power Company, on Meeting Street, which is shown to be just north of the crossing and in full sight of it. He testified that he had walked out of the barn; that he heard the approaching train; that he heard a crashing noise about the crossing; went down

there and saw Mr. Lewis lying between the north-bound track and the curbstone north of the crossing. (It is fully shown that the flagman's position in flagging the train is south of the crossing.) The witness further testified that an automobile passed him a very short time before this going at a very high speed; he said the street lights were out; that the light at the crossing was out, and had been out for four or five nights. On cross-examination he testified: "That just as I heard the crash the train was moving up to Meeting Street, then the automobile came by at a very high speed; I saw the automobile about four or five seconds after the crash going at a very high speed. * * * I saw the head-light of the engine going across; the headlight was right ahead of the engine; they have fine lights on those engines. *It was lighting up the street;* right across the street, right about the time I heard the crash. * * *" Witness was asked this question: "Let me get this very definitely; now just at the time you heard the crash you could see the train's headlight lighting up the crossing very bright. Answer: Yes, sir. *Lighting up the crossing very bright.*"

The witness estimated the speed of the hit and run automobile at "all of 70 miles."

This is plaintiff's witness, and his testimony is uncontradicted by anyone. If at the very moment this witness heard the crash, evidently produced by the impact of the hit and run automobile against the body of the unfortunate flagman, the crossing was lighted brightly by the powerful headlight of the engine, how can it be said that the absence of the overhead light was the proximate cause of this unfortunate tragedy? In addition to this, the flagman had in his hand his red lantern, easily perceivable even in the darkness of the night.

R. T. Thompson, a witness for the Seaboard Air Line Railway Company, testified that he was a watchman at the car barn of the S. C. Power Company, which is located on Meeting Street about two city blocks north of the crossing;

on the night of the accident he was crossing Meeting Street; heard the train approaching the crossing; looked towards it; saw the flagman, plaintiff's intestate, standing in the street with a lighted red lantern in his hand; heard a crash, and saw the red lantern fly through the air; then an automobile came by going north at a high rate of speed; went to the scene of action; found plaintiff's intestate lying in the street, the lantern several feet north of him, broken. Here is a disinterested witness who, at a distance of two blocks, could see the watchman in the street with his red lantern. Evidently the absence of the overhead light did not render the crossing dark and impede sight.

H. M. Corpening, the engineer of the train, testified that as he approached the crossing that night he saw the watchman, but not distinctly; saw the light come out of his cabin; went into Meeting Street; the shanty the watchman stayed in got between the witness and the flagman, and the red lantern disappeared behind it; saw an automobile going at a high rate of speed, going north across the railroad track, as it crossed saw an object fall from the car, as he thought, saw it while it was in the air; from the distance he could not tell what it was; after his engine crossed the street and stopped he went back and saw it was a man; the flagman's lantern was several feet north of where he was lying, the globe was broken; the witness testified that he found the handle off of an automobile door right near the watchman. So it appears that the engineer approaching the crossing could see the flagman with his lantern coming out into Meeting Street.

It is clear from this uncontradicted testimony that, even if the overhead lamp was not burning, the crossing was brightly lighted; that the flagman had his red lantern in his hand. The unavoidable conclusion is that the failure to light the overhead light was not the proximate cause of the fatal accident, but that it was due to the intervening and independent cause of the reckless conduct of the driver of the hit and run automobile.

There is an utter absence of proof of any negligence on the part of either defendant which was the proximate cause of the death of plaintiff's intestate.

The conclusion follows necessarily that the presiding Judge was in error when he refused to direct a verdict in favor of each defendant. Having reached this conclusion, the other questions raised by the appeal become academic.

It is the judgment of the Court that the judgment of the Court below be reversed, with direction to enter judgments in favor of the appellants.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER and CARTER concur.