659 S.E.2d 236

**James MELLEN, Appellant/Respondent**

v.

**David Patrick LANE, Respondent/Appellant.**

**No. 4354.**

Court of Appeals of South Carolina.

Submitted March 1, 2008.

Decided March 11, 2008.

Rehearing Denied April 18, 2008.

---

**2.** We decide this case without oral argument pursuant to Rule 215, SCACR.

Donald H. Howe, of Charleston, for Appellant/Respondent.

Deborah Harrison Sheffield, of Columbia, and Hugh W. Buyck, of Charleston, for Respondent–Appellant.

ANDERSON, J.:

After being injured in a brawl outside of a bar, James Mellen brought a civil action for assault and battery against David Patrick Lane. The Master–in–Equity found Lane liable for Mellen's injuries, awarding Mellen $200,000 in actual damages, but declining to award punitive damages. Lane contends the Master erred in determining his actions were the proximate cause of Mellen's injuries. Mellen maintains the Master erred by denying punitive damages. We affirm.[1]

## *FACTUAL/PROCEDURAL BACKGROUND*

In the early morning hours of September 23, 2001, Mellen sustained a fractured skull when he was struck in the head

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

with a bottle during a melee outside Big John's, a bar located in Charleston, South Carolina. At the time of the incident, Mellen was twenty-one years old, and attending the College of Charleston.

After leaving work around 10 p.m., on September 22, 2001, Mellen and his friend Josh Tarokh joined a group of friends who were already at a bar. The group consisted of Stephanie Vrla, Mellen's girlfriend; Vrla's roommates, Melissa and Jennifer; Jennifer's boyfriend; and James Traybert. Mellen and his friends relocated to Big John's between 11:30 p.m. and 12:30 a.m. Upon arriving at Big John's, Mellen observed a group of men, including Lane:

> I noticed that there was a group of gentlemen at the bar, kind of loud, obnoxious, kind of drunk guys you don't want to get in their way.
>
> . . .
>
> [Y]ou know, they were kind of—they were definitely having a good time. One of the gentlemen was passing shots around, it seems like to whatever girls would walk by him.

Mellen stated he did not interact with the men inside Big John's, other than "[a]t one point, [he] took the shot off the table and [he] placed it back on the bar." At approximately 1:30 a.m., Big John's issued their "last call" for drinks and Mellen and his friend began to leave. Mellen described the altercation and the events leading up to it:

> We all kind of gathered up inside the bar after they called last call. And we walked out the front door onto East Bay Street. And after that we walked around the corner to Pinckney Street and started walking down Pinckney Street.
>
> . . .
>
> [Lane] was standing in the doorway, and I was walking with Stephanie by my side. Her friend Melissa and Jennifer, they were in front of us. Mr. Lane was standing in the doorway. And I noticed him, he was kind of hassling Melissa and Jennifer, kind of, you know, hey, come back in, that kind of thing. And so it kind of put me on guard right off the bat.
>
> . . .

Well, we came up, and they kept on walking, Melissa and Jennifer. And when we got up there, Mr. Lane reached across my body and started grabbing my girlfriend. I caught his arm, and I asked him, you know, pretty politely, I said: "Leave it alone. We're leaving." And at that point he started saying numerous expletives to me.

. . .

I turned back to him, you know, said some certain things to him, and then turned to walk away. And I remember being pushed very hard in the back. And that's all I remember after that. And I woke up and I was in the hospital.

Josh Tarokh was aware of the group of men in Big John's: "They were just [a] loud, obnoxious, drunk crowd." Tarokh, who was walking with Mellen, saw Lane shove Mellen, and asserted Lane "[kept] pursuing [Mellen]," prompting Tarokh to "[swing] at Mr. Lane." Tarokh recalled the incident:

I just—immediately after I swung at Mr. Lane, all of his friends at the door, you know, they immediately started coming after me. So I just, you know, them swinging at me, you know, and I just kind of cover my head, ran about 10 yards away. And by the time I turned around, that's when Mr. Mellon [sic] was struck, and everybody just scattered.

. . .

Amh, you know, I had two guys like trying to punch me, and come at me. I saw [Mellen] and Mr. Lane in front of each other, you know. But after that, you know—and then after everyone ran, I just saw [Mellen] laying on the ground.

. . .

I ran towards [Mellen], and then saw that his head was busted open, blood everywhere. And I chased after Mr. Lane.

. . .

I was going to the parking lot behind Big John's. By then Mr. Lane was, you know, shutting the door of his car, you know. And I was on the phone with the dispatch, you know, and I was screaming at him, telling him to stop.

During cross-examination, Tarokh was asked if Mellen fell as a result of Lane's initial push. He responded "No" and

confessed he did not see who actually struck Mellen in the head, causing Mellen's brain injuries.

James Traybert was involved in the brawl, and attested he "thought [he] saw [Mellen] get hit with a bottle." The Master-in-Equity quizzed Traybert, "And somebody wearing a Citadel polo shirt is who slammed [Mellen] with a bottle?" Retorting affirmatively, Traybert identified Lurie Poston as the bottle wielder.

David Lane professed he planned to tailgate prior to and attend the Citadel football game on September 22, 2001. He began consuming alcohol at approximately 2 p.m., while tailgating, and continued drinking throughout the day. Lane and his comrades left the game and went to Big John's at about 10 p.m., staying there until the bar closed. Lane depicted his involvement in the skirmish:

> Well, I turned, turned away, and then I was pushed from behind. There were three people in front of me, two guys and a girl, and I was shoved from behind. And then I hit into the person in front of me, and he went to go—he went almost down. I grabbed him by the back of the shirt to pick him back up.
>
> . . .
>
> Then the individual with the shirt turned around, the individual on the left turned around. The individual on the left shoved his finger in my face, told me don't do it. We'll beat the crap out of you, something along those lines. I let out an expletive, and I got hit.

When questioned about causing Mellen's injuries, Lane asseverated: "No. I thought I was preventing an injury." Lane denied reaching for Vrla.

Lane's friend Peter Swiderski accompanied Lane to the Citadel game and Big John's the night Mellen was injured. Swiderski, while declaring he did not see who hit Mellen with a bottle, witnessed the altercation:

> I walked out. We were walking around the corner of Big John's, make a left walking towards the back, and I see David Lane surrounded by about three men. And they were, you know punching at them. I'm like, what's going on here. I'm like this is not good. I took off after them, okay.

Peeled the guy that was, if you have A David Lane's back was to me, because I'm coming around the corner. I took the guy that was on his right—hand side, pushed him off to the side. Me and him got into a scuffle there, okay? And I looked back and the Plaintiff was on the ground.

Another companion of Lane's that night was Gregory McHone. McHone remembered the row:

[W]e walked up to [the fight]. It looked like some of our buddies were in the mix, and we just stepped in and started trying to separate people.

And at some point I remember I had my back to the parking lot. And I remember the level of crowd noises increasing, like some particular event had happened. And I turned and to my left rear I saw Mr. Mellon [sic]. Well, I didn't know it was him, at the time, but I saw a gentleman laying on the ground.

McHone checked on Mellen, but Mellen did not answer: "I asked him if he was okay, and he didn't respond to me."

Lurie Poston is the individual Traybert identified as hitting Mellen with the bottle. He advanced he and his companions did purchase shots at Big John's but denied they were overly rambunctious: "Well, you know, we did buy some shots, but we weren't rowdy. You know, we were respectful." When asked if he saw what injured Mellen, Poston stated: "My impression was he fell. I never saw him get hit." Acknowledging Traybert's allegations, Poston offered:

And you know, Mr. Traybert just said he saw me bending over the guy, hit him with a bottle. That's—I never did that. I was not even there when that happened. I came after Mr. Mellon [sic] was already down on the ground. And it was my attempt to help him. But his girl friend was so hysterical, you know, that I said, well, maybe we better just back off and let them handle it.

Originally, Mellen sued Lane, McHone, Swiderski and Poston. Prior to trial, all defendants were dismissed by consent except Lane. The case was referred by consent to the Master–in–Equity for trial.

The Master–in–Equity for Charleston County heard this action and issued an order awarding Mellen $100,000 in actual

damages. The Master found the testimony and evidence offered by Mellen more credible than that offered by Lane. In his order, he named several factors contributing to his credibility determination: (1) "Lane (and his witnesses) had admittedly been drinking for approximately twelve hours prior to the brawl;" (2) Lane's testimony at trial was inconsistent with statements he gave to police shortly after the incident; (3) Lane's and his friends' flight from the scene was behavior consistent with wrongdoing (noting McHone was the only person in Lane's party to check on Mellen's condition before leaving the scene); (4) "[Mellen] and his two eyewitnesses, both by their demeanor, lesser amount of drinking and substance of their testimony, [were] more credible witnesses;" and (5) Lane's testimony regarding the push from behind was not believable. The Master–in–Equity's factual finding of proximate cause provides:

> I find that the shove of Mellen by Lane was the proximate cause of Mellen's injury. The shove by Lane was certainly the direct cause, i.e., "but for" the shove by Lane there would have been no incident which erupted into a general melee in the course of which Mellen was injured. I also find it foreseeable that the original assault could have caused Mellen's injuries. The assault occurred at closing time at a bar. Defendant and his friend had been drinking on and off for around twelve hours—a long day of drinking by anyone's standards—including the ordering of "shots" by Defendant Lane and his friends. I find that the Defendant made a rude remark, accompanied by touching Plaintiff Mellen's girlfriend, as they walked passed the Defendant. As Plaintiff turned to leave, the Defendant forcefully pushed him from behind into the street.

The Master held a hearing on punitive damages and issued an order inculcating:

> Upon review and weighing of the [*Gamble*] factors as set forth above I find that while Defendant's conduct in initiating the action which led to Plaintiff's injury and his apparent attempt to conceal his involvement in that activity is reprehensible, I find that it is not of a sufficient level of proof by the clear and convincing standard to form the basis for an award of punitive damages under the specific facts of this case.

A final order increased Mellen's actual damage award to $200,000 and denied punitive damages.

## ISSUES

1. Did the Master–in–Equity err in failing to find the intervening act of a third party broke the chain of causation and insulated Lane from liability for Mellen's injuries?
2. Did the Master–in–Equity err in awarding $200,000 in actual damages?
3. Did the Master–in–Equity err in denying punitive damages?

## STANDARD OF REVIEW

An appellate court's "scope of review for a case heard by a Master–in–Equity who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury." *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989) (citing *Wigfall v. Fobbs*, 295 S.C. 59, 60–61, 367 S.E.2d 156, 157 (1988)). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

"An action in tort for damages is an action at law." *Longshore v. Saber Sec. Servs., Inc.*, 365 S.C. 554, 560, 619 S.E.2d 5, 9 (Ct.App.2005) (citing *Culler v. Blue Ridge Elec. Coop. Inc.*, 309 S.C. 243, 246, 422 S.E.2d 91, 93 (1992)). In an action at law decided by a Master–in–Equity, "this Court will correct any error of law." *Sea Cabins on the Ocean IV Homeowners Ass'n, Inc. v. City of North Myrtle Beach*, 337 S.C. 380, 388, 523 S.E.2d 193, 197 (Ct.App.1999). "We must affirm the Master's factual findings unless there is no evidence reasonably supporting them." *Id.*; *Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*, 335 S.C. 635, 639, 518 S.E.2d 44, 46 (Ct.App.1999).

The trial judge has considerable discretion regarding the amount of damages, both actual or punitive. Because of

this discretion, our review on appeal is limited to the correction of errors of law. Our task in reviewing a damages award is not to weigh the evidence, but to determine if there is any evidence to support the damages award.

*Austin v. Specialty Transp. Servs., Inc.*, 358 S.C. 298, 310–311, 594 S.E.2d 867, 873 (Ct.App.2004) (internal citations omitted).

## *LAW/ANALYSIS*

Lane insists the Master erred in determining his actions were the direct, efficient, and proximate cause of Mellen's injuries, and he should not be held liable for the actual damages incurred as a result. We disagree.

### 1. Assault and Battery

#### a. Assault Defined

An "assault" is an attempt or offer, with force or violence, to inflict bodily harm on another or engage in some offensive conduct. *In re McGee*, 278 S.C. 506, 507, 299 S.E.2d 334, 334 (1983); *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 230, 317 S.E.2d 748, 754–755 (Ct.App.1984) ("[A]n assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant."). The elements of assault are: (1) conduct of the defendant which places the plaintiff, (2) in reasonable fear of bodily harm. *Herring v. Lawrence Warehouse Co.*, 222 S.C. 226, 241, 72 S.E.2d 453, 458 (1952); *Jones by Robinson v. Winn–Dixie Greenville, Inc.*, 318 S.C. 171, 175, 456 S.E.2d 429, 432 (Ct.App.1995).

The conduct must be of such nature and made under such circumstances as to affect the mind of a person of ordinary reason and firmness, so as to influence his conduct; or it must appear the person against whom the threat is made was peculiarly susceptible to fear, and the person making the threat knew and took advantage of the fact he could not stand as much as an ordinary person. *Brooker v. Silverthorne*, 111 S.C. 553, 559, 99 S.E. 350, 351 (1919) (citing *Grimes v. Gates*, 47 Vt. 594, 19 Am. Rep. 129 (1874)). *See In re McGee*, 278 S.C. at 508, 299 S.E.2d at 335; *Herring*, 222 S.C. at 241, 72 S.E.2d at 458.

### b. Battery Defined

"A battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient." *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 230, 317 S.E.2d 748, 754 (Ct.App.1984) (citing *Herring v. Lawrence Warehouse Co.*, 222 S.C. 226, 241, 72 S.E.2d 453, 458 (1952)); *Jones by Robinson v. Winn–Dixie Greenville Inc.*, 318 S.C. 171, 175, 456 S.E.2d 429, 432 (Ct.App.1995).

> Generally speaking, a *battery* is the unlawful touching or striking of another by the aggressor himself or by any substance put in motion by him, done with the intention of bringing about a harmful or offensive contact which is not legally consented to by the other, and not otherwise privileged. It is sometimes defined as any injury done to the person of another in a rude, insolent, or revengeful way.

*Smith v. Smith*, 194 S.C. 247, 259, 9 S.E.2d 584, 589 (1940) (internal citations omitted).

Physical injury is not an element of battery. While there must be a touching, any forcible contact, irrespective of its degree, will suffice. *See Herring*, 222 S.C. at 241, 72 S.E.2d at 458; *Gathers*, 282 S.C. at 230, 317 S.E.2d at 754.

### c. Intent is Not an Essential Element of Assault and Battery

> There is a well recognized distinction between criminal assault and a civil action for an assault and battery. In civil actions, the intent, while pertinent and relevant, is not an essential element. The rule, supported by the weight of authority, is that the defendant's intention does not enter into the case, for, if reasonable fear of bodily harm has been caused by the conduct of the defendant, this is an assault.

*Herring v. Lawrence Warehouse Co.*, 222 S.C. 226, 241, 72 S.E.2d 453, 458 (1952).

### d. Words Alone Will Not Justify Assault or Battery

> [W]e have announced the rule in numerous cases that in the absence of statute, mere words, no matter how abusive, insulting, vexatious or threatening they may be, will not

justify an assault or battery, unless accompanied by an actual offer of physical violence. *City of Gaffney v. Putnam,* 197 S.C. 237, 242, 15 S.E.2d 130, 131 (1941); *Nauful v. Milligan,* 258 S.C. 139, 146, 187 S.E.2d 511, 514 (1972).

## 2. Proximate Cause

"It is apodictic that a plaintiff may only recover for injuries proximately caused by the defendant's [conduct]." *Parks v. Characters Night Club,* 345 S.C. 484, 491, 548 S.E.2d 605, 609 (Ct.App.2001); *Howard v. Riddle,* 266 S.C. 149, 151, 221 S.E.2d 865, 865–866 (1976); *Crider v. Infinger Transp. Co.,* 248 S.C. 10, 16, 148 S.E.2d 732, 734–735 (1966). "Proximate cause is the efficient or direct cause of an injury." *McNair v. Rainsford,* 330 S.C. 332, 349, 499 S.E.2d 488, 497 (Ct.App.1998). Proximate cause is the immediate cause. *See State v. Clary,* 222 S.C. 549, 551, 73 S.E.2d 681, 682 (1952) (approving a jury instruction saying proximate cause "is the immediate cause"). An act is the proximate cause if it is "an efficient cause without which the injury would not have resulted to as great an extent and that any other efficient cause is not attributable to the person injured." *S.C. Ins. Co. v. James C. Greene and Co.,* 290 S.C. 171, 176, 348 S.E.2d 617, 620 (1986) (citing *Gray v. Barnes,* 244 S.C. 454, 462–463, 137 S.E.2d 594, 598 (1964)).

"Proximate cause requires proof of both causation in fact and legal cause." *Bishop v. S.C. Dep't of Mental Health,* 331 S.C. 79, 88, 502 S.E.2d 78, 83 (1998) (citing *Oliver v. S.C. Dep't of Highways and Pub. Transp.,* 309 S.C. 313, 316, 422 S.E.2d 128, 130 (1992)); *Rush v. Blanchard,* 310 S.C. 375, 379, 426 S.E.2d 802, 804 (1993); *Thomas Sand Co. v. Colonial Pipeline Co.,* 349 S.C. 402, 408, 563 S.E.2d 109, 112 (Ct.App. 2002). Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's action. *Bishop,* 331 S.C. at 88, 502 S.E.2d at 83 (citing *Oliver,* 309 S.C. at 316, 422 S.E.2d at 130; *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994)); *Rush,* 310 S.C. at 379, 426 S.E.2d at 804; *Thomas Sand Co.,* 349 S.C. at 408–409, 563 S.E.2d at 112. "Legal cause is proved by establishing foreseeability." *Bishop,* 331 S.C. at 88, 502 S.E.2d at 83 (citing *Koester,* 313 S.C. at 493, 443 S.E.2d at

394); *Oliver,* 309 S.C. at 316, 422 S.E.2d at 131; *Small v. Pioneer Mach., Inc.,* 329 S.C. 448, 463, 494 S.E.2d 835, 842 (Ct.App.1997).

"[L]egal cause is ordinarily a question of fact for the jury." *Oliver,* 309 S.C. at 317, 422 S.E.2d at 131; *Hughes,* 269 S.C. at 399, 237 S.E.2d at 757 (stating it is generally for the jury to say whether defendant's action was a concurring, proximate cause of the plaintiff's injuries); *Thomas Sand Co.,* 349 S.C. at 409, 563 S.E.2d at 113; *Small,* 329 S.C. at 464, 494 S.E.2d at 843 ("Ordinarily, the question of proximate cause is one of fact for the jury and the trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence."). "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon." Rule 52(a), SCRCP. "Once referred, the master or special referee shall exercise all power and authority which a circuit judge sitting without a jury would have in a similar matter." Rule 53(c), SCRCP. "Only when the evidence is susceptible to only one inference does it become a matter of law for the court." *Oliver,* 309 S.C. at 317, 422 S.E.2d at 131; *Thomas Sand Co.,* 349 S.C. at 409, 563 S.E.2d at 113.

"The touchstone of proximate cause in South Carolina is foreseeability." *Koester,* 313 S.C. at 493, 443 S.E.2d at 394 (citing *Young v. Tide Craft,* 270 S.C. 453, 462, 242 S.E.2d 671, 675 (1978)); *Small,* 329 S.C. at 463, 494 S.E.2d at 842. "Foreseeability is determined by looking to the natural and probable consequences of the act complained of." *Id.*; *Bishop,* 331 S.C. at 89, 502 S.E.2d at 83; *Oliver,* 309 S.C. at 316, 422 S.E.2d at 131; *Small,* 329 S.C. at 463, 494 S.E.2d at 842.

"The defendant may be held liable for anything which appears to have been a natural and probable consequence of his [actions]." *Bramlette v. Charter–Medical–Columbia,* 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990); *Greenville Mem'l Auditorium v. Martin,* 301 S.C. 242, 245, 391 S.E.2d 546, 548 (1990). "A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's act." *Small,* 329 S.C. at 463, 494 S.E.2d at 843.

■■■■■■■

 Conduct is the proximate cause of an injury if that injury is within the scope of reasonably foreseeable risks of the conduct. *Messier v. Adicks*, 251 S.C. 268, 271, 161 S.E.2d 845, 846 (1968). "[W]here the cause of plaintiff's injury may be as reasonably attributed to an act for which defendant is not liable as to one for which he is liable, plaintiff has failed to carry the burden of establishing that his injuries were the proximate result of defendant's [conduct]." *Id.*

 "[I]t is not necessary that the actor must have contemplated or could have anticipated the particular event which occurred." *Young,* 270 S.C. at 463, 242 S.E.2d at 675–676; *Childers v. Gas Lines, Inc.,* 248 S.C. 316, 325, 149 S.E.2d 761, 765 (1966); *Thomas Sand Co.,* 349 S.C. at 409, 563 S.E.2d at 112–113; *Parks,* 345 S.C. at 491, 548 S.E.2d at 609. "Foreseeability is not determined from hindsight, but rather from the defendant's perspective at the time of the alleged [action]." *Id.* at 491, 548 S.E.2d at 609. The defendant cannot be held liable for unpredictable or unexpected consequences. *Young,* 270 S.C. at 463, 242 S.E.2d at 676 (citing *Stone v. Bethea,* 251 S.C. 157, 161–162, 161 S.E.2d 171, 173 (1968)); *Crolley v. Hutchins,* 300 S.C. 355, 357, 387 S.E.2d 716, 717 (Ct.App.1989) ("Where the injury complained of is not reasonably foreseeable there is no liability."); *Crowley v. Spivey,* 285 S.C. 397, 408, 329 S.E.2d 774, 780 (Ct.App.1985). In determining whether a consequence is natural and probable, the defendant's conduct must be viewed in the light of the attendant circumstances. *Young,* 270 S.C. at 463, 242 S.E.2d at 676 (citing *Stone,* 251 S.C. at 161–162, 161 S.E.2d at 173); *Crolley,* 300 S.C. at 357, 387 S.E.2d at 717.

 The act, to be the proximate cause, does not need to be the sole cause of the plaintiff's injury. *Bishop,* 331 S.C. at 89, 502 S.E.2d at 83 (citing *Hughes v. Children's Clinic, P.A.,* 269 S.C. 389, 399, 237 S.E.2d 753, 757 (1977)); *Matthews v. Porter,* 239 S.C. 620, 627, 124 S.E.2d 321, 325 (1962); *Thomas Sand Co.,* 349 S.C. at 409, 563 S.E.2d at 113. Liability can be imposed on a defendant if his actions, not necessarily the sole cause, are the proximate concurring cause of the injury. *Matthews,* 239 S.C. at 627, 124 S.E.2d at 325; *Thomas Sand Co.,* 349 S.C. at 409, 563 S.E.2d at 113.

### 3. Intervening Cause

 Where there is a contention that an intervening agency interrupts the foreseeable chain of events, there are two consequences to be tested: (1) the injury complained of, and (2) the acts of the intervening agency. If the acts of the intervening agency are a probable consequence of the primary wrongdoer's actions, i.e., "foreseeable", the primary wrongdoer is liable.

*Young v. Tide Craft, Inc.,* 270 S.C. 453, 463, 242 S.E.2d 671, 676 (1978); *Matthews v. Porter,* 239 S.C. 620, 628, 124 S.E.2d 321, 325 (1962) ("To exculpate a negligent defendant, the intervening cause must be one which breaks the sequence or causal connection between the defendant's negligence and the injury alleged. The superseding act must so intervene as to exclude the negligence of the defendant as one of the proximate causes of the injury."); *Lewis v. Seaboard Air Line Ry. Co.,* 167 S.C. 204, 212, 166 S.E. 134, 137 (1932); *Dixon v. Besco Eng'g, Inc.,* 320 S.C. 174, 180, 463 S.E.2d 636, 640 (Ct.App.1995) (holding for an intervening act to break the causal link, the intervening act must be unforeseeable; whether the intervening act breaks causal connection is a question of fact for the fact finder which will not be disturbed on appeal unless found to be without evidence which reasonably supports the finding).

[W]hen the [conduct] appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause.

*Locklear v. S.E. Stages,* 193 S.C. 309, 318, 8 S.E.2d 321, 325 (1940).

The South Carolina Supreme Court, in *State v. Burton,* 302 S.C. 494, 496–7, 397 S.E.2d 90, 91, (1990), approved the following jury instruction on proximate cause:

Now the law recognizes further there may be more than one proximate cause. The acts of two or more persons may combine and concur together as an efficient or proximate cause of the death of a person. The defendant's act may be regarded as the proximate cause if it is a contributing cause

of the death of the deceased. The defendant's act need not be the sole cause of the death provided that it be a proximate cause actually and contributing to the death of the deceased.... If, however, the death was caused not by the wound or the injury that the deceased had, but was caused merely by the gross, erroneous treatment, that is, where a treatment was so gross, where a treatment was so deliberate, so willful, that it was the cause of death, then the defendant would not be liable ... The fact that other causes also contribute to the death of the deceased does not relieve the defendant from responsibility.

*Id.* Burton "was convicted of murder and criminal sexual conduct in the first degree" when his rape victim died as a result of asphyxiation forty-five days after his assault. *Id.* at 496, 397 S.E.2d at 91. Burton claimed the treating physician's negligence was an intervening cause in the victim's death and challenged the trial judge's jury instruction for proximate cause. *Id.* Because "the negligence of an attending physician is reasonably foreseeable" as an intervening cause, Burton's original intentional act remained active and the proximate cause of the victim's death. *Id.* at 498, 397 S.E.2d at 92.

▮ An intervening act by a third person will not relieve the first wrongdoer of liability if such intervention should have been reasonably foreseen in the attendant circumstances. *Bishop v. S.C. Dep't of Mental Health,* 331 S.C. 79, 89, 502 S.E.2d 78, 83 (1998) ("The intervening negligence of a third person will not excuse the first wrongdoer if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury."); *Stone v. Bethea,* 251 S.C. 157, 161, 161 S.E.2d 171, 173 (1968) ("The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability."); *Childers v. Gas Lines, Inc.,* 248 S.C. 316, 325, 149 S.E.2d 761, 765 (1966); *Matthews,* 239 S.C. at 628, 124 S.E.2d at 324; *Locklear,* 193 S.C. at 318, 8 S.E.2d at 325; *Hill v. York County Sheriff's Dep't,* 313 S.C. 303, 309, 437 S.E.2d 179, 182 (Ct.App.1993) (finding the original conduct is still active and a contributing cause of the injury if the intervention "ought to have been foreseen").

■ The test by which the original actor's conduct is insulated as a matter of law is whether the intervening act by a third party was reasonably foreseeable and anticipated, given the attendant circumstances. *Bishop,* 331 S.C. at 89, 502 S.E.2d at 83; *Stone,* 251 S.C. at 161, 161 S.E.2d at 173; *Matthews,* 239 S.C. at 628, 124 S.E.2d at 324 ("The test is to be found in the probable consequences reasonably to be anticipated, and not in the number or exact character of events subsequently arising.") (citing *Woody v. S.C. Power Co.,* 202 S.C. 73, 85, 24 S.E.2d 121, 125 (1943)); *Brown v. Nat'l Oil Co.,* 233 S.C. 345, 352–353, 105 S.E.2d 81, 85 (1958); *Locklear,* 193 S.C. at 318, 8 S.E.2d at 325; *Tobias v. Carolina Power & Light Co.,* 190 S.C. 181, 186, 2 S.E.2d 686, 688 (1939) ("It is sufficient that in view of all the attendant circumstances, he should have foreseen that his negligence would probably result in injury of some kind to some one."); *Hill,* 313 S.C. at 309, 437 S.E.2d at 182; *Collins & Sons Fine Jewelry, Inc. v. Carolina Safety Sys., Inc.,* 296 S.C. 219, 228–229, 371 S.E.2d 539, 544–545 (Ct.App.1988); *Crowley v. Spivey,* 285 S.C. 397, 407, 329 S.E.2d 774, 781 (Ct.App.1985).

A third party's intervening act is reasonably foreseeable, and the original actor still liable, if the intervening act is a natural and probable consequence of the original actor's conduct. *Oliver v. S.C. Dep't of Highways and Pub. Transp.,* 309 S.C. 313, 316, 422 S.E.2d 128, 131 (1992); *Bramlette v. Charter–Medical–Columbia,* 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990) ("The defendant may be held liable for anything which appears to have been the natural and probable consequence of his negligence."); *Childers,* 248 S.C. at 325, 149 S.E.2d at 765; *Matthews,* 239 S.C. at 628, 124 S.E.2d at 324; *Brown,* 233 S.C. at 352–353, 105 S.E.2d at 84; *Pfaehler v. Ten Cent Taxi Co.,* 198 S.C. 476, 485–486, 18 S.E.2d 331, 335 (1942) ("'Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence have been foreseen, the last result, as well as the first, and every intermediate result is to be considered in law as the proximate result of the first wrongful cause.'") (quoting 22 Ruling Case Law 134, 135, 136 (Section 19 and part of Section 20)); *Locklear,* 193 S.C. at 318, 8 S.E.2d at 325; *Tobias,* 190 S.C. at

186, 2 S.E.2d at 687–688; *Hill,* 313 S.C. at 309, 437 S.E.2d at 182.

The original actor need not contemplate the particular intervening act responsible for the injury. *Oliver,* 309 S.C. at 317, 422 S.E.2d at 131; *Bramlette,* 302 S.C. at 72, 393 S.E.2d at 916; *Childers,* 248 S.C. at 325, 149 S.E.2d at 765 ("If the actor's conduct is a substantial factor in the harm to another, the fact that he neither foresaw nor should have foreseen the extent of harm or the manner in which it occurred does not negative his liability."); *Matthews,* 239 S.C. at 628, 124 S.E.2d at 324 (quoting *Brown,* 233 S.C. at 352–353, 105 S.E.2d at 84–85); *Locklear,* 193 S.C. at 318, 8 S.E.2d at 325; *Small v. Pioneer Mach., Inc.,* 329 S.C. 448, 463, 494 S.E.2d 835, 842–843 (Ct.App.1997) ("While it is not necessary that the actor must have contemplated the particular event that occurred, the actor cannot be charged with that which is unpredictable or could not be expected to happen."); *Hill,* 313 S.C. at 308, 437 S.E.2d at 182.

"However, even if the intervening acts are not foreseeable, the primary wrongdoer is nevertheless liable if his actions alone 'would have caused the loss in natural course.'" *Young,* 270 S.C. at 463, 242 S.E.2d at 676 (quoting *Benford v. Berkeley Heating Co.,* 258 S.C. 357, 365, 188 S.E.2d 841, 844 (1972)).

In *Hensley v. Heavrin,* 277 S.C. 86, 282 S.E.2d 854 (1981), our Supreme Court examined a doctor's liability for proximately causing his patient's injuries. *Id.* at 87, 282 S.E.2d at 855. The doctor incorrectly diagnosed his patient with syphilis. *Id.* As a result, the patient's husband assumed his wife was engaged in extramarital activities, and struck her in the jaw, fracturing it in two places. *Id.* at 87–88, 282 S.E.2d at 855. The Court determined the doctor could not have reasonably foreseen the patient would be injured by her husband as a result of his incorrect diagnosis: "[T]here can be no cause of action against her doctor for the battery committed by [her] husband, since such an action is an unforeseeable intervening cause of injuries." *Id.*

## 4. Intervening Criminal Act

█ The general rule of law is that when, between [an act] and the occurrence of an injury, there intervenes a willful, malicious, and criminal act of a third person producing the injury, but that such was not intended by the [original actor] and could not have been foreseen by him, the causal chain between the [original act] and the accident is broken.

*Stone v. Bethea,* 251 S.C. 157, 162, 161 S.E.2d 171, 173–174 (1968). In other words, when between the time of the original act or omission and the occurrence of the injury, a third person intervenes with a willful, malicious, and criminal act producing the injury, but the intervening criminal act was not intended by the original actor and could not have been foreseen by him as a probable result of his own actions, the causal link between the original act and the injury is broken. *Fortner v. Carnes,* 258 S.C. 455, 462, 189 S.E.2d 24, 27 (1972); *Stone,* 251 S.C. at 162, 161 S.E.2d at 173–174 (citing *Johnston v. Atl. Coast Line Ry. Co.,* 183 S.C. 126, 135, 190 S.E. 459, 462–463 (1937)); *Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 448, 494 S.E.2d 827, 835 (Ct.App.1997). In such case, there is no proximate cause, and therefore, no liability. *Id.*

*Stone* addresses an intervening criminal act and how it affects the original actor's liability. *Stone,* 251 S.C. 157, 161 S.E.2d 171. Stone was injured when her vehicle was struck by a thief driving Bethea's vehicle. *Id.* at 159, 161 S.E.2d at 172. Stone avouched Bethea's negligence by leaving the keys in his unattended vehicle, leading to it being stolen, was the proximate cause of her injuries. *Id.* at 160, 161 S.E.2d at 172. On the other hand, Bethea asserted the intervening criminal act of the thief stealing his vehicle insulated him from the resulting injury. *Id.* at 160, 161 S.E.2d at 172–173. Bethea professed Stone being injured by Bethea's car, after it was stolen and driven negligently by a thief was an unforeseeable consequence of leaving his car unlocked, unattended, with the keys inside. *Id.* at 161, 161 S.E.2d at 173. The South Carolina Supreme Court declared:

It is our conclusion that under the evidence in this case that the intervening independent act of negligence and willfulness on the part of the thief who stole [Bethea's] automobile was the sole, proximate and efficient cause of the injury to

[Stone] and such could not have been foreseen by [Bethea] under the attendant circumstances and was not a proximate cause resulting from any act of negligence on the part of [Bethea].

*Id.* at 164, 161 S.E.2d at 174–175. The Court affirmed the trial judge's decision to grant Bethea's motion for directed verdict. *Id.*

In the case *sub judice,* the Master determined: (1) the intervening act of the bottle wielder was *not* the sole, proximate and efficient cause of Mellen's injuries; (2) the intervention of the bottle wielder could have been reasonably foreseen by Lane given the attendant circumstances; (3) Lane's actions were the proximate and efficient cause of Mellen's injuries; and (4) Lane is liable to Mellen. There is sufficient evidence in the record to reasonably support the Master's conclusions.

Lane and his companions were drinking over a twelve hour period prior to the altercation at Big John's. The incident occurred around 2 a.m., after the bar had its "last call." The Master found the testimony of Mellen and his friends more credible than Lane's. He determined Lane made rude comments to Mellen as he exited Big John's and grabbed at Mellen's girlfriend. Lane shoved Mellen in the back, and the Master reasoned this act proximately caused the fracas, without which Mellen would not have been injured. But for Lane's action, there would have been no brawl and no injury. While it is not necessary for Lane to have contemplated the exact result of Mellen being struck with a bottle, the altercation and actions therein were the natural and probable consequences of Lane's initiation of the fight under the attendant circumstances. The intervention of someone hitting Mellen with the bottle did not break the sequence or causal connection between Lane's instigation of the bout and Mellen's injury. Because this intervention was reasonably foreseeable in the attendant circumstances, Lane is not insulated from liability. Thus, the evidence amply supports the Master's factual finding of proximate cause.

## 5. Damages Awards

Lane argues the evidence in the record does not support the Master's actual damages award to Mellen. Mellen contends

the Master erred in denying him punitive damages. We are mindful of the Master–in–Equity's discretion in awarding damages, and the "any evidence" standard of review for actual and punitive damages in the present case. We review the awards seriatim.

### a. Actual Damages

 Lane maintains the evidence does not support the actual damages award. We disagree.

 Actual damages are properly called compensatory damages, meaning to compensate, to make the injured party whole, to put him in the same position he was in prior to the damages received insofar as this is monetarily possible. *See Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000). Actual damages are awarded to a litigant in compensation for his actual loss or injury. *Laird v. Nationwide Ins. Co.,* 243 S.C. 388, 396, 134 S.E.2d 206, 210 (1964). Actual damages are such as will compensate the party for injuries suffered or losses sustained. *Id.* They are such damages as will simply make good or replace the loss caused by the wrong or injury. Actual damages are damages in satisfaction of, or in recompense for, loss or injury sustained. *Barnwell v. Barber–Colman Co.,* 301 S.C. 534, 537, 393 S.E.2d 162, 163 (1989). The goal is to restore the injured party, as nearly as possible through the payment of money, to the same position he was in before the wrongful injury occurred. *Clark,* 339 S.C. at 378, 529 S.E.2d at 533.

 Actual or compensatory damages include compensation for all injuries which are naturally the proximate result of the alleged wrongful conduct of the defendant. *See Rogers v. Florence Printing Co.,* 233 S.C. 567, 578, 106 S.E.2d 258, 264 (1958). The basic measure of actual damages is the amount needed to compensate the plaintiff for the losses proximately caused by the defendant's wrong so that the plaintiff will be in the same position he would have been in if there had been no wrongful injury. *See Rogers,* 233 S.C. at 578, 106 S.E.2d at 264; *Hutchison v. Town of Summerville,* 66 S.C. 442, 448, 45 S.E. 8, 10 (1903).

In awarding actual damages in the instant case, the Master expounded:

Because I find the evidence as to the assault and battery, the proximate cause, and the nature and extent of damages have been proved by the preponderance of the evidence, I find an award of actual damages is appropriate.

I find that the fractured skull, the need for EMS, the hospitalization at MUSC, loss of a semester at college, the need for the Plaintiff to move in with his parents to recuperate, and the various aspects of his recuperation as detailed by his sister and parents, are all actual damages proximately caused by the Defendant's conduct. Plaintiff's permanent loss of smell and the closed head injury as outlined by Dr. Waid, Plaintiff, and his family are also the direct and proximate result of the assault by Defendant.

The evidence establishes that Plaintiff sustained a painful and debilitating fractured skull. The first few days were excruciatingly painful and life threatening.... Because of his fragile state, several weeks passed before he was left alone for any significant period. He required help getting around the house and continued to subsist in extreme pain. He was nauseated, weak, confused, and in extreme pain.

. . .

Plaintiff does have some permanent injuries. His sense of smell is virtually non-existent. There are certain citrus smells he notices at times. His lack of smell affects his taste of food. It also presents safety issues....

He suffered a subdural hematoma (i.e., bleeding in his brain) and had a closed head injury. The permanent effects of his injury involve loss of certain "multitasking skills" as testified by the Plaintiff and his family and supported by the medical evidence of Neuropsychologist Randolph Waid.

. . .

Closely associated with the deficiencies in the ability to "multitask" are the secondary factors of increased anxiety, fatigue and frustration. Plaintiff now tends to withdraw from the frivolity of crowds and friendly (and even family) social interaction. Because he becomes mentally fatigued more easily, he is more likely to lose his temper with co-workers or friends. He becomes easily flustered and anxious in social situations.

The Master initially awarded $100,000 in actual damages: $8,000 for past medical expenses, $40,000 for past physical pain and suffering, $12,000 for past emotional distress, $15,000 for past loss of enjoyment of life, and a cumulative $25,000 for actual future damages. Later, the Master amended his actual future damages award, averring:

> Having considered the merits of the Plaintiff's argument [to increase actual future damages] and the life expectancy tables as well as the sufficiency of evidence tending to establish that the Plaintiff will suffer future damages as a result of the injuries sustained as a result of the Defendant's conduct, I hereby alter and amend my prior award of actual future damages as follows:
>
> For future physical pain and suffering, I find actual damages in the amount of $25,000.
>
> For future emotional distress, I find actual damages in the amount of $50,000.
>
> For future loss of enjoyment of life, I find actual damages in the amount of $50,000.

Accordingly, the total actual damages awarded to Mellen amount to $200,000. The record contains sufficient evidence to support the Master's award for actual damages. Mellen was a virile young man in his early 20s when he was injured. There was a plethora of evidence regarding the cause and effect of Mellen's skull fracture to justify the Master's determination of actual damages, and there was no error of law or abuse of discretion.

### b. Punitive Damages

 Mellen contends the Master erred by denying punitive damages. We disagree.

 Punitive damages, alternatively known as exemplary damages, are imposed as punishment. *Clark v. Cantrell*, 339 S.C. 369, 378–379, 529 S.E.2d 528, 533 (2000). Punitive damages are allowed in the interest of society in the nature of punishment and as a warning and example to deter the wrongdoer and others from committing like offenses in the future. *Id.* Moreover, they serve to vindicate a private right by requiring the wrongdoer to pay money to the injured party. *Id.*

■ At least three important purposes are served by a punitive damages award: (1) punishment of the defendant's reckless, willful, wanton, or malicious conduct; (2) deterrence of similar future conduct by the defendant or others; and (3) compensation for the reckless or willful invasion of the plaintiff's private rights. *Id.* The paramount purpose for awarding punitive damages is not to compensate the plaintiff but to punish and set an example for others.

■ On the issue of punitive damages, the highest burden of proof known to the civil law is applicable. Section 15–33–135 of the South Carolina Code provides: "In any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence." S.C.Code Ann. § 15–33–135 (Supp.2003). Punitive damages can only be awarded where the plaintiff proves by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights. *Taylor v. Medenica,* 324 S.C. 200, 220, 479 S.E.2d 35, 46 (1996); *Lister v. NationsBank of Delaware,* 329 S.C. 133, 149, 494 S.E.2d 449, 458 (Ct.App.1997).

■ There is no formula or standard to be used as a measure for assessing punitive damages. However, factors relevant to consideration of punitive damages are: (1) the character of the defendant's acts; (2) the nature and extent of the harm to plaintiff which defendant caused or intended to cause; (3) defendant's degree of culpability; (4) the punishment that should be imposed; (5) duration of the conduct; (6) defendant's awareness or concealment; (7) the existence of similar past conduct; (8) likelihood the award will deter the defendant or others from like conduct; (9) whether the award is reasonably related to the harm likely to result from such conduct; and (10) defendant's wealth or ability to pay. *See Gamble v. Stevenson,* 305 S.C. 104, 111–112, 406 S.E.2d 350, 354 (1991); *see also Welch v. Epstein,* 342 S.C. 279, 306, 536 S.E.2d 408, 422 (Ct.App.2000) ("Under *Gamble,* the trial court is not required to make findings of fact for each factor to uphold a punitive damage award.").

The South Carolina Supreme Court illuminated the discretionary nature of an award of punitive damages in *Jordan v. Holt,* 362 S.C. 201, 608 S.E.2d 129 (2005):

[The Court of Appeals] must affirm the trial court's finding of punitive damages if any evidence reasonably supports the judge's factual findings. An award of punitive damages is left almost entirely to the discretion of the jury and trial judge. *Charles v. Texas Co.,* 199 S.C. 156, 18 S.E.2d 719 (1942). The rationale for vesting discretion in the trial court was expressed in *Lucht v. Youngblood,* 266 S.C. 127, 138, 221 S.E.2d 854, 860 (1976):

The fact [the trial judge] heard the evidence and was more familiar than we with the evidentiary atmosphere at trial gives [the trial judge], we think, a better informed view than we have. This is particularly true when the elements of damage are intangibles and the appraisal depends somewhat on the observation of the [witnesses] and evaluation of their testimony.

Finally, we conclude the trial court also conducted a posttrial review of the punitive damages award using the factors outlined by this Court in *Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350 (1991) and properly set forth its findings on the record. In *Gamble,* the Court explained the trial court should consider: (1) the defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood that the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) the defendant's ability to pay; and (8) other factors deemed appropriate. *Id.* The trial court found particularly reprehensible Respondents' ouster of Petitioners from the management of the business and Respondents' constant failure to respond to Petitioners' requests for meetings and financial information. The trial court again noted Respondents' misappropriation of the LLC's assets and use of money for their own personal benefit. The trial court's findings are supported by evidence in the record.

*Jordan,* 362 S.C. at 207, 608 S.E.2d at 132. In reinstating the punitive damages award, the Court emphasized the application of the *Gamble* factors, the discretion of the fact finder's award, and the "any evidence" standard applicable to appellate review of punitive damages awards.

Here, in the order denying punitive damages, the Master opined:

> While the Defendant's initial shove of the Plaintiff that set the brawl in motion was intentional, the resulting injuries to Mellen's head were unintentional; however, I specifically found that Defendant was the proximate cause of Plaintiff's injuries since the injuries suffered by the Plaintiff were the natural and foreseeable consequences of the Defendant's actions.
>
> Plaintiff argues that the reckless behavior of the Defendant entitles Plaintiff to punitive damages as a matter of right. . . .
>
> I do not believe that Defendant's reckless conduct *necessitates* a finding of punitive damages. . . .

We find no error of law in the Master–in–Equity's denial of punitive damages. He weighed each factor before denying a punitive damages award, as set forth in his November 7, 2006, order. While the Master declared in his factual findings, "Lane's shove to Mellen in the back constituted a battery and was an intentional and deliberate act which was willful, wanton, reckless, and malicious under the circumstances," it is completely within his discretion to deny a punitive damages award. The Master found Mellen was successful in proving by the preponderance of evidence Lane's conduct was the proximate cause of his injuries, but he held Mellen fell short of the clear and convincing evidence standard required for a punitive damages award. Because punitive damages are not mandatory or obligatory and within the Master's discretion, the denial of a punitive damages award was proper.

## CONCLUSION

We rule Lane's conduct was the proximate cause of Mellen's injuries. We affirm the Master–in–Equity's order awarding actual damages and denying punitive damages. Accordingly, the orders of the Master–in–Equity are

**AFFIRMED.**

SHORT and THOMAS, JJ., concur.