635 S.E.2d 97

**J.T. BAGGERLY, Appellant,**

v.

**CSX TRANSPORTATION, INC., National Railroad Passenger Corporation, d/b/a Amtrak, Southern Companies of South Carolina, Inc., and Ervin Lavern Lucky, Defendants,**

**Of Whom CSX Transportation, Inc. and National Railroad Passenger Corporation, d/b/a Amtrak are Respondents.**

No. 26208.

Supreme Court of South Carolina.

Heard June 7, 2006.

Decided Aug. 28, 2006.

Rehearing Denied Sept. 20, 2006.

364

John K. Koon, of Koon & Cook, P.A., of Columbia, and John S. Nichols, of Bluestein & Nichols, LLC, of Columbia, for Appellant.

Charles Craig Young, of Young, Miller & Braddock, L.L.C., of Florence, James M Saleeby, Jr., of Aiken, Bridges, Nunn, Elliott & Tyler, P.A., of Florence, John C. Millberg, of Mill-

berg Gordon & Stewart, P.L.L.C., of Raleigh, for Respondents.

Justice WALLER:

This is a direct appeal from the trial court's grant of a directed verdict in favor of respondents. Appellant also raises various evidentiary issues, including whether the trial court erred in excluding one of his expert witnesses, a professional engineer. We affirm in part, reverse in part, and remand for a new trial.

## FACTS

At approximately seven a.m. on August 21, 2000, an Amtrak Silver Meteor passenger train derailed in Lake City. Minutes before the derailment, a street sweeper had jumped the curb and collided with the railroad track after defendant Ervin Lucky ("Lucky") fell asleep while operating the sweeper. Appellant J.T. Baggerly was the locomotive engineer driving the Amtrak train. Appellant suffered injuries from the derailment and brought suit against: his employer, respondent National Railroad Passenger Corporation ("Amtrak"); the track owner, respondent CSX Transportation, Inc. ("CSX"); the owner of the street sweeper, defendant Southern Companies of South Carolina, Inc. ("Southco"); and the sweeper operator, Lucky. Appellant's complaint alleged a Federal Employers' Liability Act [1] (FELA) claim against Amtrak, and separate negligence claims against CSX, Southco, and Lucky. Appellant sought actual and punitive damages.

The trial court denied cross-motions for summary judgment, and the case proceeded to trial. After appellant presented his case regarding liability, respondents moved for a directed verdict which the trial court granted. The trial continued against defendants Southco and Lucky, and the jury returned a verdict for appellant, finding $577,000 in actual damages.

## ISSUES

1. Did the trial court err in directing a verdict for Amtrak and CSX?

---

1. 45 U.S.C. § 51 *et seq.* (2000).

2. Did the trial court err in excluding appellant's out-of-state professional engineer expert pursuant to S.C.Code Ann. § 40–22–30?

## DISCUSSION

### 1. Directed Verdict

■ Appellant argues that he presented sufficient evidence to withstand respondents' motion for directed verdict. Specifically, appellant contends there was enough evidence to show that the negligence of Lucky, the street sweeper operator, **combined with CSX's negligence** regarding insufficient ballast on the roadbed, to bring about the derailment. We agree.

Appellant presented evidence from two experts who each established that if CSX had maintained the proper ballast level at the point of derailment, then the street sweeper would not have collided with the cross-tie, but instead would have ridden the incline up and over the tracks, with only the tires coming into contact with the track.

Tom Paton, a railroad industry safety consultant and former employee of the Federal Railroad Administration, testified that CSX did not comply with its own internal specifications for ballast requirements at the point of derailment.[2] When asked what factors contributed to cause the misalignment of the track, Paton responded as follows: "Well, obviously, the fact that Mr. Lucky fell asleep and drove the sweeper up towards the tracks is a factor, and the absence of a full ballast section of the part of CSX is another factor." As to the fact that a piece of wood from the crosstie was found lodged in the sweeper's underframe, Paton opined that the wood "came from the track upon impact with the tie itself." In addition, Paton stated that the bumper of the sweeper actually struck the rail.

---

2. According to Paton, CSX's specification drawing 2602 required a minimum of eight inches of ballast below the crosstie and full ballast even with the top of the tie. It also required a six-inch shoulder level with the top of the tie and then progressing downward at a two-to-one slope. This internal CSX document states that the specification is "the minimum necessary to assure the track is maintained to permit safe passage of trains at authorized speed."

Paton further testified that if the ballast had been "full," i.e., in compliance with CSX's own specifications, "neither the piece of crosstie would have wedged in the undercarriage, nor would the front bumper have contacted the rail." Paton did not believe that the street sweeper's speed was a factor because the relevant fact was that "the undercarriage in the bumper struck the track itself." Finally, Paton stated that with a proper ballast section, the air-filled tires of the sweeper would have struck the rail.

Don Bowden also provided expert testimony for appellant. Bowden, a railroad safety consultant and former Road Master[3] for CSX, testified that at the point of derailment, the ballast was missing between the ends of the ties and had eroded down the bank of the footpath that crossed the track at that particular location; he further stated that he did not believe that CSX was in compliance with federal regulation 49 C.F.R. § 213.119 which required CSX, as track owner, to comply with written procedures which address the maintenance and inspection of Continuous Welded Rail.[4] In Bowden's opinion, if the railroad track had been properly ballasted, the street sweeper should not have misaligned the track because the ballast would have protected the end of the crosstie. Additionally, Bowden testified that a CSX employee in the Florence division had, at deposition, testified that in the Florence subdivision, vehicles strike CSX tracks approximately three or four times a year.

■ When reviewing the grant of a directed verdict, the evidence **and all reasonable inferences therefrom** must be viewed in the light most favorable to the party against whom the verdict was directed. *E.g.*, *Quesinberry v. Rouppasong*, 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998). If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury. *Id.*

■ To establish a negligence cause of action under South Carolina law, the plaintiff must prove the following three

---

3. A Road Master is in charge of track maintenance and supervises track inspectors.

4. Bowden testified that CSX filed its specification drawing 2602 in accordance with 49 C.F.R. § 213.119.

elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. *E.g., Bloom v. Ravoira,* 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000).

Normally, proximate cause is a question of fact for the jury, and it may be proved by direct or circumstantial evidence. *Player v. Thompson,* 259 S.C. 600, 193 S.E.2d 531 (1972). Proximate cause requires proof of: (1) causation-in-fact, and (2) legal cause. *Bramlette v. Charter–Medical–Columbia,* 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990). Causation-in-fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence, and legal cause is proved by establishing foreseeability. *Id.*

Indeed, foreseeability is considered "the touchstone of proximate cause," and it is determined by looking to the natural and probable consequences of the defendant's act or omission. *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994). However, while foreseeability of some injury from an act or omission is a prerequisite to establishing proximate cause, the plaintiff need not prove that the defendant should have contemplated **the particular event** which occurred. *Whitlaw v. Kroger Co.,* 306 S.C. 51, 410 S.E.2d 251 (1991).

Moreover, it is not necessary to prove that the defendant's negligence was the **sole** proximate cause of the injury. *Player v. Thompson, supra.* Instead, it is sufficient if the evidence establishes that the defendant's negligence is "a concurring or a contributing proximate cause." *Id.* at 606, 193 S.E.2d at 534. " '[C]oncurring causes operate contemporaneously to produce the injury, **so that it would not have happened in the absence of either.**' " *Id.* (emphasis added, citation omitted). In other words, "[i]f the actor's conduct is a substantial factor in the harm to another, the fact that he neither foresaw nor should have foreseen the extent of harm or the manner in which it occurred does not negative his liability." *Childers v. Gas Lines, Inc.,* 248 S.C. 316, 325, 149 S.E.2d 761, 765 (1966).[5]

---

5. Likewise, for appellant's FELA claim, he must prove the traditional common law elements of negligence (i.e., duty, breach, causation and

Appellant argues that a jury issue was created regarding respondents' liability because of the insufficient ballast level at the point of derailment. More specifically, appellant's liability theory is that the inadequate ballast level was a contributing, concurring cause which combined with Lucky's negligence to produce appellant's injuries. We agree with appellant that the evidence presented was sufficient to create a jury question on each element of negligence, and therefore, the trial court erred by granting respondents' directed verdict motion.

As to duty, it is reasonable to infer from appellant's evidence that both CSX and Amtrak had a duty to properly inspect and maintain the tracks which includes keeping proper ballast levels.[6] Regarding breach, appellant's experts testified that at the point of derailment the crossties were exposed, and therefore, the ballast was not compliant with CSX's own specification drawing 2602.

The critical issue is whether appellant presented sufficient evidence of proximate cause. As to cause-in-fact, both experts supplied testimony that **but for** the lack of proper ballast, the street sweeper would not have collided with the tie and the track. Viewing the expert testimony in a light most favorable to appellant, a reasonable inference can be drawn that had the ballast been fully in compliance, the sweeper would have

damages) and that the employer's negligence "contributed, in whole or in part, to the worker's injury." *Rogers v. Norfolk S. Corp.*, 356 S.C. 85, 93, 588 S.E.2d 87, 91 (2003), cert. denied, 541 U.S. 1085, 124 S.Ct. 2812, 159 L.Ed.2d 246 (2004) (citing 45 U.S.C. § 51 which states that a railroad a "shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier").

6. CSX's duty to maintain the ballast is based, at least in part, by its own specification 2602. *See Peterson v. Nat'l R.R. Passenger Corp.*, 365 S.C. 391, 618 S.E.2d 903 (2005). Amtrak had a nondelegable duty to maintain the tracks by virtue of its agreement to run its trains on CSX-owned tracks and CSX's clear duty to inspect the track under federal regulations. *See Sinkler v. Missouri Pac. R. Co.*, 356 U.S. 326, 331–32, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958) (where the United States Supreme Court held that "when a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of . . . FELA").

ridden over the tracks instead of colliding with the track and causing the misalignment.

As to foreseeability, there was evidence presented that: (1) sufficient ballast maintains proper track alignment; and (2) vehicles strike track three or four times per year in the Florence division. Viewing this evidence in a light most favorable to appellant, we conclude that a jury could have properly found it was foreseeable to CSX that the lack of proper ballast could cause a misalignment of the track due to a vehicle colliding with the track. Thus, it can be reasonably inferred from the evidence that the failure to maintain the ballast level contributed **in part** to the derailment. *See Player v. Thompson, supra* (the plaintiff need not prove the defendant's negligence was the **sole** proximate cause of the injury); *see also Rogers v. Norfolk S. Corp., supra* (to prove a FELA claim, plaintiff must prove that the railroad employer's negligence contributed "in whole or in part" to the injury).

Moreover, it was not necessary for appellant to establish that respondents specifically foresaw that a street sweeper operator would fall asleep and collide with the track; appellant merely has to show that it was foreseeable that respondents' act (or omission) could cause, or be a contributing cause to, appellant's injury. *See Whitlaw v. Kroger Co., supra* (the plaintiff need not prove the defendant should have contemplated the particular event that occurred); *Childers v. Gas Lines, Inc., supra* (if the defendant's conduct is a substantial factor in the harm to another, the fact that he neither foresaw nor should have foreseen the manner in which it occurred does not absolve the defendant of liability).

Therefore, viewing the evidence and all reasonable inferences in the light most favorable to appellant, we hold that the trial court erred in directing a verdict for respondents. *Quesinberry v. Rouppasong, supra.*[7]

---

7. We recognize that this Court has already decided a case arising out of this particular derailment. *See Peterson v. Nat'l R.R. Passenger Corp.,* 365 S.C. 391, 618 S.E.2d 903 (2005). In *Peterson,* a passenger on the train brought suit against Amtrak and CSX; we affirmed summary judgment in the railroad defendants' favor. Many similar arguments that are raised by appellant in this case were raised and rejected in *Peterson.* Hence, respondents argue that *Peterson* compels a decision upholding the directed verdict. However, the crucial evidence that was

## 2. *Exclusion of Professional Engineer Expert Witness*

■ Prior to opening arguments, but after a jury had been selected, the parties argued several motions *in limine.* Significantly, respondents moved to exclude the testimony of one of appellant's expert witnesses, Robin Harrison, a professional engineer from California. Appellant had specially retained Harrison as an accident reconstruction expert and his expert testimony was also critical for the foundation of several exhibits that had been prepared. Harrison's trial testimony was going to be presented by videotaped trial deposition, and the recording of the deposition had been done in California.

■ Pursuant to South Carolina Code Section 40–22–30, the trial court granted respondents' motion to exclude Harrison's testimony because he was not a South Carolina licensed professional engineer. Appellant argues that the trial court misconstrued the statute and erred by excluding Harrison. This presents a novel issue of law. When reviewing a novel question of law, we are free to decide the issue with no particular deference to the lower court. *E.g., I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 411, 526 S.E.2d 716, 719 (2000); *Osprey, Inc. v. Cabana Ltd. P'ship,* 340 S.C. 367, 372, 532 S.E.2d 269, 272 (2000).

Title 40, Chapter 22 of the South Carolina Code governs the licensing of professional engineers and land surveyors. Section 40–22–20 defines the practice of engineering as follows, in pertinent part:

> "Practice of engineering" means any service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or creative work as consultation, investigation, **expert technical testimony** . . . .

S.C.Code Ann. § 40–22–20(22) (Supp.2005) (emphasis added). Prior to 2000, however, the definition of the practice of engineering did **not** include the phrase "expert technical testimony." *See* S.C.Code Ann. § 40–22–10(4) (2001). Section 40–

lacking in *Peterson* was presented at trial in the instant case. We therefore agree with appellant's arguments that *Peterson* is distinguishable from this case.

22–30 prohibits an individual from engaging in the practice of engineering in South Carolina without being registered pursuant to Chapter 22. S.C.Code Ann. § 40–22–30 (Supp.2005). Violation of this section is a misdemeanor subject to a penalty of imprisonment up to six months and/or a fine up to $2,000. S.C.Code Ann. § 40–22–200 (Supp.2005).

The trial court found that Harrison was not competent to testify in a South Carolina court because the plain language of the statute prohibits a person from practicing engineering without a South Carolina license, and that practice includes giving "expert technical testimony." Appellant argues that the purpose of the statute is not to restrict the admission of expert testimony in state court litigation, but rather to protect South Carolina consumers from unqualified people holding themselves out as engineers. In addition, appellant asserts that the trial court's decision is not in harmony with Rule 702, SCRE, which governs expert testimony.[8] We agree with appellant.

Regarding statutory construction, all rules "are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Kiriakides v. United Artists Commc'ns, Inc.*, 312 S.C. 271, 440 S.E.2d 364 (1994). Nonetheless, however plain the ordinary meaning of the words used in a statute may be, we will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention. *Id.*

The plain language of the statute uses the words "expert technical testimony" which arguably applies to expert testimony offered in a court of law. Thus, the statutory language suggests that only South Carolina licensed professional engineers are permitted to give expert engineering testimony in

---

8. Rule 702, SCRE, states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

this State. We find, however, that this result could not have reasonably been intended by the Legislature.

First, we agree with appellant that one of the primary purposes of Section 40–22–30 is to shield South Carolina consumers from those who are not properly credentialed pursuant to this State's standards, but who nevertheless hold themselves out to be professional engineers. In the instant case, however, Harrison's role was as an **expert witness** in accident reconstruction engineering. His credentials, which include his status as a California licensed professional safety engineer as well as his education in mechanical engineering, go to his qualifications **as an expert witness,** rather than as a professional engineer offering services in South Carolina. In other words, Harrison's services were being offered to a South Carolina jury, not to the State's citizens seeking traditional professional engineering services.

Second, to accept the trial court's interpretation would clearly contravene Rule 702, SCRE, which states that if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify." Pursuant to Rule 702, Harrison plainly qualified as an expert witness; to permit his exclusion would therefore effect a significant limitation on Rule 702. Without clear indication from the Legislature that the 2000 amendment was, in fact, intended specifically to limit Rule 702 in this way, we decline to adopt that interpretation.

Respondents contend that because the professional engineer statute is more specific than Rule 702 and was enacted more recently, the statute should control. *See Langley v. Pierce,* 313 S.C. 401, 403, 438 S.E.2d 242, 243 (1993) ("Generally, specific laws prevail over general laws, and later legislation takes precedence over earlier legislation"). However, we reiterate that it cannot be ignored that the effect of the 2000 amendment radically alters the scope of Rule 702. By applying the engineer licensing statute literally, no out-of-state engineer could ever be an expert witness in a South Carolina state court if the testimony is even remotely related to engineering. This singling-out of one type of expert witness

seems to us to be an absurd result, and therefore we reject respondents' argument. *Kiriakides, supra.*

Furthermore, if we held that exclusion of an out-of-state professional engineering expert is proper under the statute, the result would be to limit the truth-seeking duty of the courts of this State. We can envision numerous litigation scenarios where a party's position might only be supported by the expert testimony of an engineer licensed and practicing outside the state of South Carolina. Yet, experts are intended **to assist juries.** We refuse to endorse an interpretation of the professional engineer licensing statute which has the potential of either preventing out-of-state experts from testifying in South Carolina courts or imposing the unreasonable burden of getting licensed in this State simply to be permitted to provide forensic testimony.

Accordingly, we reverse the trial court's decision to exclude appellant's expert witness in accident reconstruction engineering from testifying at trial.

### Appellant's Remaining Issues

Appellant raises several other issues. These issues are affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: Issues 3, 5, and 6: *State v. Mitchell,* 330 S.C. 189, 498 S.E.2d 642 (1998); (a ruling *in limine* is not final; unless an objection is made at the time the evidence is offered and a final ruling procured, the issue is not preserved for review); *State v. Floyd,* 295 S.C. 518, 369 S.E.2d 842 (1988) (rulings *in limine* do not constitute final determinations on admissibility of evidence); Issue 4: *Webb v. CSX Transp., Inc.,* 364 S.C. 639, 656, 615 S.E.2d 440, 449 (2005) (Federal Railroad Administration report was not relevant **to liability** where it did not address specific breach complained of).

### CONCLUSION

In summary, we reverse the directed verdict for respondents and remand for a new trial. Additionally, we reverse the trial court's decision to exclude the testimony of appellant's accident reconstruction expert. Despite the statutory language in the definition of the practice of engineering, *see* § 40–22–20(22), we hold that an out-of-state professional engineer may give expert testimony, if qualified under Rule 702,

despite not being licensed in South Carolina. Finally, we affirm appellant's remaining issues.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

TOAL, C.J., MOORE, BURNETT, JJ., and Acting Justice ROGER M. YOUNG, concur.