**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1642**

SUNLAND CONSTRUCTION COMPANY, INCORPORATED,

            Plaintiff – Appellee,

      and

THE CITY OF MYRTLE BEACH,

            Defendant – Appellee,

         v.

WILBUR SMITH, INCORPORATED,

            Defendant – Appellant,

      and

COASTAL SCIENCE AND ENGINEERING, INCORPORATED; THOMAS E. WHITE,

            Defendants,

HARTFORD INSURANCE COMPANY,

            Third Party Defendant.

Appeal from the United States District Court for the District of South Carolina, at Florence.  R. Bryan Harwell, District Judge. (4:05-cv-01227-RBH)

Submitted:  June 2, 2010              Decided:  July 6, 2010

Before KING, DAVIS, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

Franklin J. Smith, Jr., David A. Anderson, Mason A. Summers, RICHARDSON, PLOWDEN & ROBINSON, P.A., Columbia, South Carolina, for Appellant. Michael W. Battle, BATTLE & VAUGHT, P.A., Conway, South Carolina; Lawrence C. Melton, NEXSEN PRUET, LLC, Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sunland Construction Company, Inc. ("Sunland") filed suit against the City of Myrtle Beach, South Carolina (the "City") alleging breach of contract after the City terminated its contract with Sunland for the installation, by horizontal direct drilling ("HDD"), of three 42-inch pipes to carry rainwater under Myrtle Beach and approximately 1000 feet out to sea. The termination of the contract was based on Sunland's failure or refusal to complete the project. Sunland sought approximately $3 million in costs it allegedly incurred while attempting to perform under the contract based on what it alleged were defective specifications. Sunland also sued the City's design engineer, Wilbur Smith Associates ("WSA"), for breach of its implied warranty of the suitability of the design specifications.

The City counterclaimed against Sunland for breach of contract, seeking to recover approximately $400,000 from Sunland and/or its surety in excess re-procurement costs it incurred by having the project completed by another contractor, using the alternative, and less risky, "open trench" method. The City also sued WSA for negligence and breach of contract.

Following an eight-day bench trial, the district court concluded that Sunland could not recover against the City for breach of contract because there was no meeting of the minds as

3

to the allocation of risk for adverse subsurface conditions, and that the City could not recover against Sunland for the same reason.  The court also found WSA was not liable to Sunland for negligence; however, it found that WSA was liable to the City. The ultimate finding of liability was based on the following subsidiary findings: (1) WSA negligently recommended that the contract be awarded to Sunland, inasmuch as; (2) Sunland's bid was dramatically lower than the other HDD bids; (3) WSA had not adequately investigated Sunland's bid prior to recommending it; and (4) WSA, which was not independently qualified to render a recommendation, had fired its HDD consultant prior to making its recommendation to the City, a fact that WSA had withheld from the City at the time it made its recommendation. The district court awarded damages in the amount of $459,769.00 plus costs and attorney's fees in favor of the City against WSA, rejected all other claims, and denied WSA's motion for reconsideration.

Neither Sunland nor the City has appealed the district court's orders; however, WSA noted an appeal alleging that the district court erred by:

(1) finding that WSA's negligence was the proximate cause of the City's damages; and

(2) concluding that there was no meeting of the minds between Sunland and the City regarding allocation of the risks for adverse subsurface conditions.

4

Following a trial, this court views the record in a light most favorable to the party prevailing below. See Sec. Exch. Comm'n v. Pirate Investor LLC, 580 F.3d 233, 237 n.2 (4th Cir. 2009); ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 171 n.1 (4th Cir. 2002). The court reviews a district court's conclusions of law de novo and its factual findings for clear error. Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); but see Fed. R. Civ. P. 52(a)(6) (due regard must be given "to the trial court's opportunity to judge the witnesses' credibility").

## I. Proximate Cause

It is well settled that issues of negligence, including proximate cause, "are generally treated as findings of fact reviewable under Fed. R. Civ. P. 52(a)." See Bonds v. Mortensen and Lange, 717 F.2d 123, 125 (4th Cir. 1983) (citing Scheel v. Conboy, 551 F.2d 41, 43 (4th Cir. 1977); Lane v. United States, 529 F.2d 175, 180 (4th Cir. 1975).

Under South Carolina law, "[p]roximate cause requires proof of both causation in fact and legal cause." See Mellen v.

5

Lane, 377 S.C. 261, 278, 659 S.E. 2d 236 (Ct. App. 2008) (citations omitted). "Causation in fact is proven by establishing the plaintiff's injury would not have occurred 'but for' the defendant's action," whereas legal causation "is proved by establishing foreseeability" of harm to the plaintiff. Id. (citations omitted). WSA argues that its negligence was neither the "cause in fact" nor the "legal" cause of the City's injuries. We address each contention in turn.

WSA argues that its negligence was not the "but for" cause of the City's injuries because, even in the absence of its negligent recommendation that the contract be awarded to Sunland, the City "may still have contracted with Sunland." In support of this contention, WSA points to the testimony of a superintendent with the City's Public Works Department, which, WSA maintains, acknowledged that "even if the City had been aware during the bid process that the HDD method carried more risks that [sic] the trench method, the City may possibly have still awarded the project to Sunland." WSA also argues that the City may have opened itself up to public criticism and lawsuits, if the City had not selected Sunland, which had been the lowest bidder for the project.

However, based on the entire record, when viewed in the light most favorable to the City, we find that the district court did not clearly err in finding that WSA was the cause in

6

fact of the City's injuries (i.e., that but for WSA's recommendation, the City would not have chosen Sunland). There is substantial evidence to support the City's contentions that the City was not required to award the contract to the lowest bidder and that it was persuaded to hire Sunland based on WSA's representations. Further, WSA has offered nothing more than mere speculation concerning what the City "may possibly" have done in its attempt to show that the district court clearly erred on this point. When taken as a whole, the record does not lead to the "definite and firm" conclusion "that a mistake has been committed."

Turning to WSA's contention that it was not the legal cause of the City's injuries, we note that the South Carolina Supreme Court has stated that while a plaintiff must establish that the defendant reasonably could have foreseen that some injury arising out his act or omission might occur, it is not necessary for him to prove that the defendant should have contemplated the particular event that ultimately occurred. See J.T. Baggerly v. CSX Transp., Inc., 370 S.C. 362, 369-71, 635 S.E.2d 97 (2006). A plaintiff does not have to prove that the defendant's negligence was the sole proximate cause of his injuries; he "merely has to show that it was foreseeable that [the defendant's] act (or omission) could cause, or be a contributing cause to, appellant's injury." Id., 370 S.C. at

7

371, 635 S.E.2d 97 (citing <u>Whitlaw v. Kroger Co</u>., 306 S.C. 51, 410 S.E.2d 251 (1991)).  Thus, "it is sufficient if the evidence establishes that the defendant's negligence is 'a concurring or a contributing proximate cause.'"  <u>Id.</u>, 370 S.C. at 369, 635 S.E.2d 97 (citation omitted).

WSA argues that even if its negligence in the bidding process set the stage for the City's injuries, Sunland's acts were the sole proximate cause.  We find this argument fails for a number of reasons.

First, in a bidding process, where WSA was retained specifically for its engineering expertise, it was reasonably foreseeable that the City would enter into a contract with a company based on WSA's recommendation.  Moreover, because the company that WSA recommended bid the job at a dramatically lower cost than any comparable bidders, and because WSA did not investigate its bid, it was also foreseeable that the company recommended could not or would not perform the promised services for the promised fee.  It follows, then, that it was a natural and probable consequence of WSA's negligence that the City would be forced to pay more to find cover in the re-procurement market.

Moreover, even to the extent Sunland's conduct contributed to the City's injuries, this fact alone does not sever WSA's liability for its initial negligence, which set into

8

motion all of the events that ultimately, and foreseeably, lead to the City's harm. Cf. Mellon, 377 S.C. at 281, 659 S.E.2d 236 ("if the acts of the intervening agency are a probable consequence of the primary wrongdoer's actions, i.e., 'foreseeable,' the primary wrongdoer is liable"). This is because there was no "break[] [in] the sequence or causal connection between the [WSA's] negligence and the injury alleged." Id. (citing Matthews v. Porter, 239 S.C. 620, 628, 124 S.E.2d 321, 325 (1962)).

In short, it is clear that WSA's conduct was a "substantial factor in the harm to [the City]," and the mere fact that WSA "neither foresaw nor should have foreseen the extent of the harm or manner in which it occurred does not negative [its] liability." See J.T. Baggerly, 370 S.C. at 369, 635 S.E.2d 97. Thus, because the harm was foreseeable, the district court did not clearly err in determining that WSA's acts or omissions were the legal cause of the City's injuries.

II. Contract Claims Between Sunland and the City

As for WSA's contention that the district court clearly erred in determining that there was no meeting of the minds, and thus no binding contract between the City and Sunland, both the City and Sunland argue, inter alia, that WSA lacks standing to contest this finding. We agree that WSA, as a

9

stranger to the ostensible contract between Sunland and the City, lacks standing. See R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157, 164 (4th Cir. 2004) ("Generally, a third person not in privity of contract with the contracting parties has no right to enforce a contract." (applying South Carolina law) (citation omitted)). In essence, WSA asserts it has standing on the altogether tenuous ground that it was "aggrieved" by the finding of a lack of mutual assent, implying that the district court was essentially left with no choice but to impose liability on it (rather than on Sunland) for the City's excess costs. This contention lacks merit.

In any event, as stated above, South Carolina law recognizes that liability may attach when there are multiple concurring or contributing proximate causes, and WSA has failed to point to any case or authority that states, or even suggests that this legal principle is inapplicable based on whether or not a contract was formed or contractual claims are involved. Notably, WSA declined to assert indemnity or contribution claims against Sunland to avoid or lessen its potential liability to the City for its failure to exercise reasonable care in recommending which bid the City should accept. It may not belatedly insert such a claim into the case by challenging the district court's factual findings in respect to an alleged contract to which it was never a party.

10

                    *   *   *   *   *

    We accordingly affirm the district court's judgment.
We dispense with oral argument because the facts and legal
contentions are adequately presented in the materials before the
court and argument would not aid the decisional process.


                                                    AFFIRMED

                            11