**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Suzan Garland, Respondent,

v.

Robert Cade, Cristy Cade, and Roger Singleton, Defendants,

of whom

Robert Cade and Christy Cade are the Appellants,

and Roger Singleton is a Respondent.

Appellate Case No. 2022-000597

———————

Appeal From Lexington County
Debra R. McCaslin, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-076
Heard November 12, 2024 – Filed March 5, 2025

———————

**AFFIRMED IN PART, REVERSED IN PART**

———————

S. Jahue Moore, of Moore Bradley Myers, PA, of West Columbia, for Appellants.

Thomas Frank Dougall, of Dougall & Collins, of Elgin, and Michal Kalwajtys, of Baker Ravenel & Bender, LLP, of Columbia, both for Respondent Roger Singleton.

Creston William Brown, H. Freeman Belser, and Michael Joseph Polk, all of Belser Law Firm, PA, of Columbia, for Respondent Suzan Garland.

---

**PER CURIAM:** This case arises from claims by Suzan Garland against Robert and Christy Cade and Roger Singleton. The Cades purchased land upstream from Garland in Lexington County, and Singleton is the party whom the Cades hired to work on their property allegedly resulting in the silting of Garland's pond. Garland settled her claims against Singleton, and, after a three-day trial, the circuit court directed a verdict in favor of Singleton as to the Cades' claims against him. The jury returned a verdict against the Cades for $125,000 in actual damages and $8,000 in punitive damages. We affirm in part and reverse in part.

**FACTS**

Garland owns thirteen acres of land in West Columbia. Located on the property is a two-acre pond that was built in the 1950s. The pond is in Garland's front yard. She and her late husband purchased the property in 1985 because it had a pond, and they both used it for recreational purposes.

In March 2018, the Cades purchased a thirty-nine-acre tract of land uphill from Garland's pond. At that time, the property was heavily wooded. Shortly thereafter, the Cades timbered and graded the property in anticipation of raising cattle and also built a barn and outbuilding on the property. At a later time, the Cades built a residence on the land.

The property was timbered by a logging company not involved in the lawsuit. Singleton, a friend of Robert's from their previous time as law enforcement officers, was hired to repair a dam on the Cades' property and remove the leftover stumps and fill the holes after timbering. The Cades went to the County and obtained permits for constructing the barn and outbuilding but did not obtain a land disturbance permit.[1] Robert stated his belief that because the property was zoned

---

[1] Lexington County Stormwater Ordinance 19-10 addresses runoff stemming from land disturbing activities. Section 3-2 of the ordinance provides for exceptions to

agricultural, such a permit was not required. According to his testimony, Robert was never informed he needed a land disturbance permit and did as the County instructed with regard to the project. In October of 2018, Garland's pond became "yucky" and muddy like "nestle quick" after two hurricane systems brought significant rainfall to the area. Prior to that time, it had been a dark water pond as is typical of a healthy pond in the area.

Garland notified the County about the issue and of the activity on the Cades' property. On October 22, 2018, Brandon Corder, a County inspector for storm water management, came out to the area after the department received a call. He testified he observed the clearing of the Cades' property and construction of a building on the property indicating to him that an impervious surface had been constructed on the land which may have implicated the need for a land disturbance

---

the requirement that property owners apply for and obtain a land disturbance permit. It provides:

> The following land disturbance activities are exempt from the provisions of this Ordinance.
>
> . . .
>
> (b) Agricultural land disturbances that disturb less than one acre.
>
> (c) Agricultural land disturbing activities that disturb more than one acre and do not create new impervious surfaces.
>
> . . .
>
> It shall be the responsibility of the applicant (property owner, lessee or person responsible for land disturbing activities) to provide a complete Land Disturbance Permit Application Package that meets all the requirements of this Ordinance, the Land Development Manual, and other Federal and State regulations.

permit. Soon after, he visited Garland's property and observed the siltation of her pond. A stop work order was issued that day.[2]

After speaking with Robert on the phone, Michael Spires, director of public works, lifted the stop work order the following day. According to Spires, Robert indicated heavy equipment was on site to start the stabilization of the property with grass seed, and that is why he lifted the order. The letter sent to the Cades lifting the order indicated they should "move forward with the stabilization of the project site to eliminate offsite impacts." The communication also contained a copy of the stormwater ordinance. Spires acknowledged that the County did not require the Cades to go through the process of obtaining a land disturbance permit after these issues were brought to its attention.

Work continued on the property. On November 27, 2018, Garland's attorney sent a cease and desist letter to the Cades putting them on notice that Garland's pond was being silted and they would be subject to a lawsuit if they did not rectify the situation. The Cades hired Gerald Lee, a civil engineer, to examine the matter and prepare a report. Lee evaluated the property on December 11 and 12, 2018. He testified approximately 95 percent of the property had been denuded and no evidence of sediment control was in place. He stated he was surprised a land disturbance permit was not obtained for the project, but he also admitted he was not familiar with the specifics of precisely which permits were required when dealing with agricultural property. Lee recommended the Cades work with the County to get into compliance with any requirements. On December 24-26, 2018, the Cades "sprigged" their property with Bermuda grass to stabilize the soil.[3] Robert indicated the land had been seeded with winter grass on the right side of their driveway prior to the hurricane activity in September.

In April of 2019, Garland filed this lawsuit. She hired engineer Williams Mathews to evaluate the amount of sediment in her pond versus the amount in the pond in the previous one to one-and-a-half years. He indicated 1,428 cubic yards of "new" sediment was present and stated his opinion that 90 percent of that had come from the Cades' property. The Cades significantly undercut Mathews' testimony on cross-examination. Additionally, the Cades objected to Mathews' testimony that

_____

[2] The record indicates a stop work order had also been issued in June of 2018. However, the record does not explain why the order was either issued or subsequently lifted.
[3] Sprigging is the planting of sprigs, plant sections cut from rhizomes or stolons that include crowns and roots, at spaced intervals in furrows or holes.

the silt most likely came from their property.  They argued this opinion was not included in his report provided to them during discovery.  Mathews admitted he did not form that opinion until after providing the report to Garland's counsel, and he arrived at his opinion after reviewing topographical maps and other information online.

Approximately one-and-a-half years after the litigation had been commenced, the Cades sued Singleton.  However, Robert testified he only sued Singleton because his lawyer told him to do so.  He claimed neither he and his wife nor Singleton had done anything wrong.  Nevertheless, Robert testified if anything was done wrong, it was Singleton's responsibility.

The evidence regarding damages at trial included an estimate for sediment removal obtained by Garland which totaled $435,075.08.  When asked about the value of her real estate, Garland testified to a range of values.  The Cades had sold about a third of an acre of their property to a neighbor for $10,000, and a neighbor listed property for $80,000 per acre, but that property contained a much newer and larger home.  The Cades pointed out that the property's value had been assessed at $91,000 for tax purposes.

At the close of all evidence, Singleton moved for a directed verdict.  After argument, the circuit court granted the motion concluding no testimony or evidence demonstrated Singleton had done anything wrong.  The jury found the Cades liable as to the claims against them for negligence and nuisance and awarded actual damages of $125,000 on the nuisance claim.  The jury also awarded $8,000 in punitive damages.  This appeal followed.

**LAW/ANALYSIS**

### A. Directed Verdict Motions

The Cades appeal the grant of directed verdict in favor of Singleton and the denial of directed verdict as to themselves.  We affirm in both instances.

"When reviewing a motion for directed verdict or judgment notwithstanding the verdict, the appellate court applies the same standard as the circuit court." *Hennes v. Shaw*, 397 S.C. 391, 398, 725 S.E.2d 501, 505 (Ct. App. 2012).  "Accordingly, '[i]n deciding a motion for directed verdict, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party.'" *Id*. (quoting *Minter v. GOCT, Inc.,* 322 S.C. 525, 527, 473 S.E.2d 67, 69 (Ct. App.

1996)). "If more than one inference can be drawn from the evidence, the case must be submitted to the jury." *Id.* (quoting *Minter*, 322 S.C. at 527, 473 S.E.2d at 69). "Moreover, in reviewing a circuit court's grant or denial of a motion for directed verdict or JNOV, this court reverses only when there is no evidence to support the ruling or when the ruling is governed by an error of law." *Id.*

The Cades brought a breach of contract claim, a negligence claim, and an indemnification claim against Singleton. In seeking a directed verdict, neither Singleton nor the Cades were specific about the three causes of action, but the circuit court granted the motion so that Singleton was completely removed from the suit, meaning it found none of the three claims were viable. The Cades admitted they were unaware of anything Singleton did wrong and they alleged no direct damages from his actions or inactions. Therefore, directed verdict as to claims for breach of contract and negligence was proper. The facts could only arguably establish a claim for indemnification.

However, even in looking at indemnification, the Cades must offer both that Singleton did something wrong that caused them damages *and* that they themselves were in no way liable. *See Fowler v. Hunter*, 388 S.C. 355, 363, 697 S.E.2d 531, 535 (2010) ("A plaintiff asserting an equitable indemnification cause of action may recover damages if he proves: (1) the indemnitor was liable for causing the plaintiff's damages; (2) the indemnitee was exonerated from any liability for those damages; and (3) the indemnitee suffered damages as a result of the plaintiff's claims against it, which were eventually proven to be the fault of the indemnitor."). The record contains evidence suggesting the Cades failed to obtain the required permits and failed to comply with the instructions and warnings they were given throughout this process. Even if Singleton was partly responsible for the damages to Garland, the record does not establish the Cades were without fault. Consequently, granting directed verdict to Singleton on an indemnification claim was also appropriate.

As to the Cades' request for directed verdict in their own favor, viewing the evidence in the light most favorable to Garland, the record contains evidence from which the jury could conclude the Cades failed to stabilize their property and/or failed to obtain the required permits resulting in damage to Garland's property. Consequently, the denial of directed verdict to the Cades was also appropriate.

## B. Viewing the Properties

The Cades maintain the circuit court erred in denying their motion to have the jury view the properties in question. We find this issue unpreserved.

"A jury view is a matter within the discretion of the trial court. The trial court's decision will not be reversed absent an abuse of discretion." *State v. Brown*, 389 S.C. 84, 89, 697 S.E.2d 622, 625 (Ct. App. 2010) (citation omitted). "In order to preserve an issue for appellate review, a party must both raise that issue to the trial court and obtain a ruling." *Foster v. Foster*, 393 S.C. 95, 99, 711 S.E.2d 878, 880 (2011).

Regarding the request for a jury view of the properties, the circuit court originally stated, "I'm gonna deny that." However, the following exchange then took place:

> The Cades: If -- if I'm -- if the [c]ourt could hold off on ruling, I believe that we can bring some law tomorrow and maybe show the [c]ourt.
>
> THE COURT: All right. I'll revisit it in the morning.
>
> The Cades: Thank you.

The record does not reveal any further discussion regarding this motion. Therefore, because the Cades failed to obtain a final ruling on this point, the issue is not preserved.

### C. Expert Testimony of Mathews

The Cades contend the circuit court erred in allowing Mathews to testify that the majority of the sediment in Garland's pond came from the Cades' property. We find this issue unpreserved.

"A contemporaneous objection is required to preserve issues for appellate review." *Turner v. Med. Univ. of S.C.*, 430 S.C. 569, 590, 846 S.E.2d 1, 12 (Ct. App. 2020). "Ordinarily, if an appellant fails to object the first time a statement is made, he or she waives the right to raise the issue on appeal." *Id.* (quoting *Scott v. Porter*, 340 S.C. 158, 167, 530 S.E.2d 389, 393 (Ct. App. 2000)). "A motion to strike testimony after it has been admitted without objection is addressed to the sound discretion of the [circuit court]." *Id.* (alteration in original) (quoting *McPeters v. Yeargin Constr. Co.*, 290 S.C. 327, 332, 350 S.E.2d 208, 211 (Ct. App. 1986)).

The Cades maintain Mathews' opinion regarding the origin of the silt in Garland's pond was not included in his report provided during discovery. Mathews admitted he did not form that opinion until after providing the report to Garland's counsel, and he arrived at his opinion after reviewing topographical maps and other information online. However, the Cades did not object to Mathews' direct testimony. On cross-examination, they made their argument as part of cross-examination and then in an appeal to the judge. The circuit court indicated it did find the testimony prejudicial stating "I do think it's prejudicial and it should have been brought up long before today's date, so let's move on. I'm -- I don't even want to go to that subject." The record demonstrates no contemporaneous objection was made, the argument was not clearly ruled upon, and the Cades made no motion to strike Mathews' testimony. For all these reasons, we find this argument unpreserved.

## D. Stormwater Ordinance/Land Disturbance Permit

The Cades argue the circuit court erred in "submitting the ordinance to the jury" and in failing to grant their directed verdict motion at the close of Garland's case on the basis that no evidence established the ordinance applied to them because of the agricultural exemption and the court should make that decision as a matter of law. We disagree.

First, the Cades did not renew their directed verdict motion on this basis at the close of all the evidence. Consequently, this argument is unpreserved. *See Wright v. Craft*, 372 S.C. 1, 19, 640 S.E.2d 486, 496 (Ct. App. 2006) (explaining "[w]hen a defendant moves for a directed verdict under Rule 50, SCRCP at the close of the plaintiff's case, he must renew that motion at the close of all evidence" to preserve the matter for appellate review). Additionally, the Cades could still be liable to Garland under the common law even if the ordinance was inapplicable. Therefore, the grant of directed verdict would have been erroneous. With regard to "submitting" the ordinance to the jury, the ordinance had been introduced into evidence as an exhibit. The parties generally agreed the circuit court would not read or charge the ordinance directly but would note that the ordinance exists and the jury would decide whether or not it was applicable to the Cades. Based on this apparent agreement the Cades cannot now object to how the matter was handled at trial. *See Hollins v. Wal-Mart Stores, Inc.*, 381 S.C. 245, 251, 672 S.E.2d 805, 808 (Ct. App. 2008) (finding an issue was not preserved for appellate review because the party "acquiesced in the trial court's ruling").

## E. Proximate Cause – Negligence and Nuisance Claims

Next, the Cades argue Garland failed to establish that their actions proximately caused her harm and therefore the negligence and nuisance claims failed as a matter of law. We disagree.

"To establish a negligence cause of action under South Carolina law, the plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *J.T. Baggerly v. CSX Transp., Inc.*, 370 S.C. 362, 368-69, 635 S.E.2d 97, 101 (2006). "Normally, proximate cause is a question of fact for the jury, and it may be proved by direct or circumstantial evidence. Proximate cause requires proof of: (1) causation-in-fact, and (2) legal cause." *Id.* at 369, 635 S.E.2d at 101 (citations omitted). "Causation-in-fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence, and legal cause is proved by establishing foreseeability. *Id.* "[I]t is not necessary to prove that the defendant's negligence was the sole proximate cause of the injury. Instead, it is sufficient if the evidence establishes that the defendant's negligence is 'a concurring or a contributing proximate cause.'" *Id.* (citation omitted) (quoting *Player v. Thompson*, 259 S.C. 600, 606, 193 S.E.2d 531, 534 (1972)).

"A nuisance has been defined as 'anything which works hurt, inconvenience, or damages; anything which essentially interferes with the enjoyment of life or property.'" *Blanks v. Rawson*, 296 S.C. 110, 113, 370 S.E.2d 890, 892 (Ct. App. 1988) (quoting *Strong v. Winn-Dixie Stores*, 240 S.C. 244, 253, 125 S.E.2d 628, 632 (1962)). "Generally, a private nuisance is that class of wrongs that arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property, personal or real." *O'Cain v. O'Cain*, 322 S.C. 551, 561, 473 S.E.2d 460, 466 (Ct. App. 1996).

The record demonstrates the Cades' clearing of their property without proper stabilization contributed to the silting of Garland's pond. The evidence presented established this conclusion by a preponderance thereby supporting the jury's verdict. It is possible that multiple parties failed to take steps to protect Garland's

rights.  However, that does not render the Cades blameless and the record sustains the jury's finding of liability as to the negligence[4] and nuisance claims.

### F.  Actual Damages Award

The Cades contend the actual damages award was improper and unsupported by the evidence.  We disagree.

"The damages recoverable for trespass and nuisance being strictly limited to damages to one's property interests, the only proper measure of them is the value of the property.  A well-known principle of property law is that property consists of a bundle of rights." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 141, 747 S.E.2d 468, 474-75 (2013).  "The value of a piece of property is the value of all of the rights one obtains through ownership of the property.  Thus, included in the value of property are the rights of exclusive possession and use and enjoyment protected by the trespass and nuisance causes of action respectively." *Id*. at 141, 747 S.E.2d at 475.  "The jury's determination of damages . . . is entitled to substantial deference." *Vinson v. Hartley*, 324 S.C. 389, 404, 477 S.E.2d 715, 723 (Ct. App. 1996).

The jury was presented with a myriad of information regarding both the measure and amount of damages in this case.  Garland presented evidence that the cost to remove the siltation from her pond would be $435,000.  The parties seemed to eventually agree that the cost of restoration could not exceed the fair market value of the property.  The evidence presented regarding the value of the property ranged from the tax assessor's value of $90,000 to the sale or listing price of neighboring, but not necessarily comparable properties, up to $400,000.  The circuit court charged the jury that negligence damages would be "the reasonable cost of repair and the value of the use of the property during the repair time."[5]  The circuit court further charged the jury that the measure of damages for a nuisance claim was "compensation for injury or loss sustained."  The court stated that "[t]he victim of either a permanent or temporary nuisance can also recover for specific identifiable losses, such as material annoyance, discomfort[,] or hurt."

---

[4] As to the negligence claim, the jury found liability, but awarded no damages.  It appears the option was simply left off the verdict form.  This point has not been raised by either party, and was not raised at trial.

[5] As noted, the jury awarded no damages as to the negligence claim, so any discussion of the measure of damages under a negligence theory is unnecessary.

Here, the jury did not use the restoration figure to determine damages as it was much higher than the award. The jury could have awarded any number from $90,000 to $400,000 for the value of Garland's property based on the evidence presented.[6] The jury's award of damages is entitled to substantial deference and is affirmed.

### G. Punitive Damages Award

Finally, the Cades appeal the circuit court's decision to submit the issue of punitive damages to the jury because clear and convincing evidence was not presented to support such an award. We agree.

"Punitive damages are quasi-criminal in nature and are imposed to punish a wrongdoer and to deter like conduct." *Longshore v. Saber Sec. Servs., Inc.,* 365 S.C. 554, 564, 619 S.E.2d 5, 11 (Ct. App. 2005). "Although appellate review of an award of punitive damages is limited to the correction of errors of law, an award of punitive damages must be proven under a significant burden of proof: clear and convincing evidence." *Id*. "Furthermore, the plaintiff must prove the defendant's misconduct was willful, wanton, or in reckless disregard of his rights." *Id.* "[T]rial judges in this state have long been required, as a threshold matter, to assess the culpability of a defendant's conduct to determine whether punitive damages are available in a given case (i.e., whether the issue should be submitted to the jury)." *Id*. (quoting *South Carolina Farm Bureau Mut. Ins. Co. v. Love Chevrolet, Inc.,* 324 S.C. 149, 152, 478 S.E.2d 57, 58 (1996)).

Upon review, we find no clear and convincing evidence that the Cades' conduct was willful, wanton, or in reckless disregard of the rights of others. The evidence at most establishes they were negligent. The Cades were in communication with the

---

[6] In *Babb*, the supreme court discussed the measure of damages for nuisance and indicated that material annoyance and discomfort are part and parcel of a property owner's bundle of rights as opposed to a separate loss tied to the individual. 405 S.C. at 152, 747 S.E.2d at 480. The instruction regarding nuisance damages may have confused the jury regarding how to calculate the annoyance and discomfort components of Garland's claim. However, the propriety of the jury charge is not raised on appeal, and the measure of damages awarded is still within the range of evidence presented regarding the value of her property.

County regarding their activities on their land. They obtained certain permits related to their projects. The Cades seeded the property, put up silt fencing, and eventually sprigged the property. Neither the apparent miscommunications with the County nor the fact that grass had not grown or the sprigging did not happen immediately following the receipt of Lee's report support a finding of wanton, reckless behavior by the clear and convincing evidence that is required. Therefore, the punitive damages award is reversed.

Based on all of the foregoing, the circuit court is

**AFFIRMED IN PART, REVERSED IN PART.**

**KONDUROS, GEATHERS, and TURNER, JJ., concur.**